PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2029
_____

GREGG C. REVELL;
ASSOCIATION OF NEW JERSEY RIFLE & PISTOL
CLUBS INC.

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY;
SCOTT ERICKSON

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

Third Party Plaintiff

v.

CONTINENTAL AIRLINES; COUNTY OF ESSEX;
ESSEX COUNTY JAIL; ESSEX COUNTY PROSECUTOR;
JOHN DOES 1-10,

Third Party Defendants

Gregg C. Revell,

Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-402)
District Judge: Honorable Katharine S. Hayden

_____

Argued
January 26, 2010

Before:   RENDELL and JORDAN, *Circuit Judges*,
and PADOVA[*], *District Court Senior Judge*

(Filed: March 22, 2010)

_____

Richard E. Gardiner   [ARGUED]
3925 Chain Bridge Rd. - #403
Fairfax, VA   22030

_____

[*]Honorable John R. Padova, United States District Court
Senior Judge, for the Eastern District of Pennsylvania, sitting by
designation.

Richard V. Gilbert
Evan F. Nappen
21 Throckmorton Ave.
Eatontown, NJ   07724
        *Counsel for Appellant*

Donald F. Burke, Sr.   [ARGUED]
Port Authority of New York & New Jersey
One PATH Plaza
Jersey City, NJ   07306

Shirley J. Spira
Sharon K. McGahee
Port Authority of New York & New Jersey
Law Dept., Opinions & Appeals Div.
225 Park Avenue South
13th Floor, Room 1324
New York, NY 10003
        *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Gregg C. Revell appeals from the dismissal of his claims, brought pursuant to 42 U.S.C. § 1983, seeking to impose liability upon the Port Authority of New York and New Jersey ("Port Authority") and Port Authority Police Officer Scott Erickson for arresting him under New Jersey's gun laws and

3

seizing his firearm and ammunition. According to Revell, his arrest was unlawful because he was in compliance with a provision of the Firearm Owners' Protection Act ("FOPA"), 18 U.S.C. § 926A, which allows gun owners licensed in one state to carry firearms through another state under certain circumstances. Because we conclude that, at the time of his arrest, Revell's conduct did not bring him within the protection of that statute, we will affirm both the dismissal of his § 926A-based claim and the grant of summary judgment to the Port Authority and Erickson on Revell's closely related Fourth Amendment claim. We will likewise affirm the grant of summary judgment against Revell on his due process claim under the Fourteenth Amendment.

## I.    Background

### A.    Revell's Arrest

On March 31, 2005, Revell, a resident of Utah, embarked on a flight from Salt Lake City to Allentown, Pennsylvania, via Minneapolis/St. Paul and Newark, New Jersey. When he arrived at the Northwest Airlines counter[1] in the Salt Lake City Airport, he checked his luggage through to his final destination and declared that, in the luggage, he was carrying an unloaded firearm contained in a locked hard case and ammunition in a separate locked hard case. He signed an orange firearm

---

[1] While the record is not entirely clear, it appears that Northwest and Continental Airlines had some shared responsibility for transporting Revell to Allentown.

declaration tag, which was placed inside the locked hard case containing the firearm.  That was apparently the last thing on the trip that went as expected.  The several mishaps that followed ultimately relate to the accessibility of the firearm and ammunition and are thus key to this dispute.

Because his flight into Newark was late, Revell missed his connection from Newark to Allentown.  He booked the next flight to Allentown, which was scheduled to leave Newark at 8 p.m. that evening, but, after the airline changed arrangements, the passengers scheduled for that flight were asked to board a bus, instead of a plane, headed for Allentown.  Revell got on the bus; however, when he learned that his luggage was not on board, he got off to locate it.[2]  By the time he retrieved his luggage, he had missed the bus, and no other connections to Allentown were available.  He then went directly to the Newark Airport Sheraton Hotel in a hotel shuttle, taking his luggage with him.  The driver of the shuttle van placed Revell's luggage, which contained the locked hard case containers, in the rear storage area of the van, which was not immediately accessible from the passenger compartment where Revell was seated. Revell stayed at the hotel overnight but did not open either of the locked containers during his stay.

---

[2]In a triple-whammy for Revell, not only had the airline made him miss his connection and then put him on a bus instead of a plane, a Northwest employee had mistakenly checked his luggage to Newark, instead of Allentown, as his final destination.

5

The next morning, he took the hotel's airport shuttle back to the Newark Airport and, again, his luggage was placed out of his reach in the rear of the shuttle. Upon arriving at the airport around 8:30 a.m., he proceeded to the ticket counter to check his luggage and declared that he was carrying an unloaded firearm in a locked hard case and ammunition in a separate locked hard case. Revell was told to take his luggage to the Transportation Security Administration ("TSA") area so that it could be x-rayed. After the luggage went through the x-ray machine, the TSA agent at the other end of the machine took the hard cases out and asked Revell for the key to them, which Revell provided. The TSA agent opened the cases using Revell's key and removed the firearm and ammunition. The orange declaration sheet from Salt Lake City was still in the case with the firearm.

About twenty minutes later, several Port Authority officers, including Officer Erickson, escorted Revell to an area away from other passengers where they questioned him about the firearm and ammunition. Revell explained that he had declared his weapon and ammunition, and that he was merely passing through New Jersey en route to Allentown, Pennsylvania. He also showed the officers his Utah concealed firearm permit and his driver's license. When Erickson questioned Revell about why he had the firearm, Revell explained that he was traveling to Pennsylvania to pick up a car to bring back to Utah and that "he was going to need the weapon for protection" as he drove the car home. (App. at 33.) Revell also informed Erickson that, upon missing his flight the day before, he had taken possession of his bag with the firearm in it and had gone to a hotel in Newark to stay for the night.

Erickson asked Revell whether he had authority to carry the firearm in Pennsylvania, but Revell did not respond.[3]

Erickson arrested Revell for possession of a handgun without a permit in violation of N.J. Stat. Ann. § 2C:39-5(b) and for possession of hollow-point ammunition in violation of N.J. Stat. Ann. § 2C:39-3(f).[4] Revell was handcuffed, held overnight at the Port Authority jail, and then transferred to the Essex County, New Jersey, Jail, where he was incarcerated for three days until he was released on bond. Four months later, on August 2, 2005, the Essex County prosecutor administratively dismissed all of the charges against him. However, Revell's firearm, ammunition, holster, locks, and hard cases, which were seized at the time of his arrest, were not returned until July 24, 2008, more than two years after the ill-fated trip and

---

[3]At his deposition, Revell stated that he did not check to make sure that he could carry his firearm in Pennsylvania prior to traveling there, but believed that it was legal for him to carry a weapon there because the instructor for his concealed firearm permit class did not mention that he could not do so.

[4]Section 2C:39-5(b) provides that "[a]ny person who knowingly has in his possession any handgun, ... without first having obtained a permit to carry the same as provided in N.J.S.2C:58-4, is guilty of a crime" of the second or third degree depending on the nature of the handgun. Section 2C:39-3(f) provides that "[a]ny person, ... who knowingly has in his possession any hollow nose or dum-dum bullet, ... is guilty of a crime of the fourth degree."

approximately a year after he filed his amended complaint in this action.

## B. Revell's Complaint

Understandably troubled about his and his property's treatment, Revell brought the present § 1983 case, alleging that the Port Authority and Erickson had violated his rights under § 926A of FOPA.[5] In essence, § 926A allows a person to transport a firearm and ammunition from one state through a second state to a third state, without regard to the second state's gun laws, provided that the traveler is licensed to carry a firearm in both the state of origin and the state of destination and that the firearm is not readily accessible during the transportation.[6] 18 U.S.C. § 926A. Revell also alleged that the appellees violated his Fourteenth Amendment rights by retaining his

---

[5]Additionally, the Association of New Jersey Rifle & Pistol Clubs, Inc. brought a § 1983 claim based on 18 U.S.C. § 926A, seeking to enjoin the Port Authority from enforcing against the Association's non-resident members the New Jersey statutes under which Revell was arrested. The District Court found that the Association lacked standing and dismissed its claim. The Association appealed that ruling to our Court and we reversed, holding that the Association did, in fact, have standing to pursue its claim on behalf of its members. *Revell v. Port Auth. of N.Y. & N.J.*, 321 F. App'x 113, 117 (3d Cir. 2009). The Association's lawsuit is not at issue in this appeal.

[6]The text of § 926A is set forth in section III.A, *infra*.

8

firearm, holster, locks, containers and ammunition, thereby depriving him of his property without due process. He sought damages and an injunction requiring the Port Authority to return his property.

### C.  *The District Court's Dismissal of Revell's Complaint*

Erickson moved to dismiss Revell's claims and the Port Authority moved for judgment on the pleadings.[7] They argued, among other things, that probable cause existed for the arrest because § 926A was inapplicable, given Revell's overnight stay in New Jersey. They also argued that Erickson was entitled to qualified immunity.

The District Court noted that its first task was to "determine whether 18 U.S.C. § 926A created an enforceable personal right," an issue of first impression. (App. at 44.) The Court answered that question by holding that, pursuant to the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (1989), Revell was required to frame his § 1983 claim in terms of the Fourth Amendment, as opposed to § 926A, because he sought damages for an allegedly improper arrest. In other words, the Court concluded that, "[b]ecause individuals already

---

[7]Since the Port Authority had already answered Revell's complaint, it moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), while Erickson, who had not answered the complaint, moved to dismiss for failure to state a claim under Rule 12(b)(6).

have a method of recovering damages pursuant to § 1983 if they are arrested or charged without probable cause, [i.e., a claim under the Fourth Amendment,] it is unnecessary and, indeed, improper ... to conclude that § 1983 provides a separate or alternative remedy for a violation of § 926A." (App. at 49.) The Court thus dismissed Revell's § 1983 claim for the alleged violation of § 926A, but it granted him leave to file an amended complaint stating a Fourth Amendment claim.

The Court also dismissed Revell's procedural due process claims for damages and injunctive relief.[8] The Court, relying on *Parratt v. Taylor*, 451 U.S. 527 (1981), explained that, if constitutionally adequate state procedures were available to remedy the deprivation of Revell's property, he could not succeed on his due process claim. Since Revell neither availed himself of state law remedies nor explained why those remedies would be futile or constitutionally inadequate, the Court dismissed that claim. However, it granted Revell leave to amend his complaint to allege that "the Port Authority's postdeprivation remedies for the return of seized property are constitutionally inadequate." (App. at 53.)

On June 29, 2007, the District Court entered an order dismissing Revell's complaint and allowing him leave to amend pursuant to the memorandum opinion.

---

[8]The District Court analyzed Revell's due process claims to determine whether he had also pled a substantive due process violation and concluded that he had not. That issue is not on appeal.

10

### D.     Revell's Amended Complaint

Not long after, on July 13, 2007, Revell filed an amended complaint against the Port Authority and Erickson.  In the first count, he asserted that his arrest and the seizure of his property violated his Fourth Amendment rights because, pursuant to § 926A, he was legally entitled to carry the firearm and ammunition in his luggage, notwithstanding New Jersey law.  Revell also asserted two procedural due process claims – one for damages and one for injunctive relief requiring the return of his property – based on allegations that the Port Authority "has no post-deprivation procedure for Revell to recover the [property] seized from him" and that the defendants "did not provide him notice of the basis for the retention of the property and of an opportunity for a post-deprivation hearing." (App. at 64.)  He later voluntarily dismissed his due process claim for injunctive relief, after his property was returned to him.

### E.     The District Court Grants Summary Judgment on Revell's Claims

Following discovery, the Port Authority and Erickson moved for summary judgment, arguing that probable cause supported Revell's arrest and that Erickson is protected by qualified immunity.  They asserted that § 926A did not immunize Revell from arrest for violating New Jersey's gun laws because, contrary to an express requirement of § 926A, Revell's weapon was readily accessible to him during his stay in New Jersey.  They also moved for summary judgment on Revell's due process claim, arguing that New Jersey has in place adequate post-deprivation procedures for those who seek the

11

return of property seized upon arrest, including state tort remedies, and that Revell failed to avail himself of any of those procedures.

The District Court held that the Port Authority and Erickson were entitled to summary judgment on the Fourth Amendment claim, "because probable cause [for the arrest and property seizure] developed during ... [Erickson's] questioning concerning Revell's transportation of a handgun and ammunition through New Jersey." (App. at 78.) The Court found persuasive the defense argument that Revell's conduct fell outside § 926A since it is undisputed that Revell left the airport with his luggage for an overnight stay at a hotel in New Jersey, thus giving him ready access to the gun during that period. The Court also explained that "§ 926A does not address anything but vehicular travel; it does not encompass keeping the weapon – locked in a case or not – in an airport hotel overnight." (App. at 77.) Alternatively, the Court held that Erickson was entitled to qualified immunity because probable cause existed for Revell's arrest and, therefore, no constitutional right was violated. The District Court also concluded that summary judgment against Revell on his due process claim was proper because he had failed to take advantage of available state remedies for the return of his property, namely, a state court lawsuit.[9]

---

[9]The Court noted that Revell's property was apparently returned to him after he made "a simple request to Essex County." (App. at 81.)

12

In a March 31, 2009 order, the District Court granted the summary judgment motion in accordance with its memorandum opinion. Revell timely appealed both the summary judgment order and the order dismissing his original complaint.

## II.      Standard of Review[10]

Our review of the District Court's decision to grant the Port Authority's motion for judgment on the pleadings and Erickson's motion to dismiss is plenary. *See E.I. DuPont de Nemours & Co. v. United States*, 508 F.3d 126, 131 (3d Cir. 2007); *DeHart v. Horn*, 390 F.3d 262, 272 (3d Cir. 2004). A court confronted with a Rule 12(b)(6) motion must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant. *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008). A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

We also exercise plenary review over an appeal from a grant of summary judgment. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 369 (3d Cir. 2001). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

---

[10]The District Court had jurisdiction over Revell's claims pursuant to 28 U.S.C. §§ 1331 and 1343. Our jurisdiction is based upon 28 U.S.C. § 1291.

13

law. *Id.* (citing FED. R. CIV. P. 56(c)). "In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party." *Id.*

## III.  Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no question that the defendants in Revell's suit were acting under color of state law when effecting his arrest. The issue is whether Revell has alleged a violation of any right under federal law. Revell's § 1983 claims seek to remedy perceived violations of his alleged statutory right under § 926A, his Fourth Amendment rights, and his Fourteenth Amendment due process rights.[11] We will first address the § 926A claim and the Fourth Amendment claim, before turning to the due process claim.

### A.     *Section 926A and the Fourth Amendment*

Revell challenges both the District Court's dismissal of his § 926A claim and the Court's grant of summary judgment on his Fourth Amendment claim. He asserts that he never should have been required to re-frame his § 926A claim in terms of the

---

[11]For ease of reference, we will refer to those § 1983 claims as Revell's § 926A claim, his Fourth Amendment claim, and his due process claim.

14

Fourth Amendment, since, as he sees it, § 926A provides a federal right that may be remedied by way of § 1983, independent of the Fourth Amendment. As to his Fourth Amendment claim, Revell asserts that the District Court erred in concluding that probable cause existed for his arrest. More specifically, and returning to the same § 926A theme, he says that the District Court incorrectly determined that he did not fall within the protection provided by that statute. Revell does not dispute that his conduct violated New Jersey law but instead claims that he was not subject to arrest because he complied with § 926A and that § 926A preempts New Jersey's gun laws under the circumstances presented here.[12] He also challenges the District Court's conclusion that Erickson was entitled to qualified immunity against the Fourth Amendment claim.

In order for Revell to prevail either on the theory that he had a right under § 926A that can be remedied through § 1983 or on the theory that the Fourth Amendment should have

---

[12]Section 927 of Title 18, captioned "Effect on State law," provides:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

15

protected him from arrest because § 926A gave him a right to transport his gun, he must first establish that he complied with the conditions set forth in § 926A so as to be entitled to its protection. Accordingly, we begin our analysis with the question of whether Revell was in compliance with § 926A when he was arrested in New Jersey.

Section 926A of FOPA, entitled "Interstate transportation of firearms," provides:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided*, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A. It is clear from the statute that a person transporting a firearm across state lines must ensure that the firearm and any ammunition being transported is not "readily accessible or ... directly accessible from the passenger compartment of [the] transporting vehicle." *Id*. Looking solely at the allegations of Revell's original complaint, it is also clear that what happened here does not fall within § 926A's scope because his firearm and ammunition were readily accessible to him during his overnight stay in New Jersey.

Revell attempts to invoke the protection of the statute by alleging that "[d]uring the transportation of the firearm, neither the firearm nor the ammunition were readily accessible or directly accessible from the passenger compartment of the aircraft or the bus [that he took to the hotel]." (App. at 25.) But only the most strained reading of the statute could lead to the conclusion that having the firearm and ammunition inaccessible while in a vehicle means that, during the owner's travels, they can be freely accessible for hours at a time as long as they are not in a vehicle. The complaint reveals that Revell's luggage containing the firearm was, in fact, available to him while he was at the hotel. He alleged that, "[a]fter retrieving his bag, because there were no more connections to Allentown until 9:45 a.m. the following morning ... , [he] went directly to, and stayed the night at, the Airport Sheraton Hotel." (App. at 23.) He further alleged that he returned with his luggage directly to the airport the next day and that a TSA agent, after x-raying the luggage, opened it with a key that Revell gave him. Taking those facts as true, it is clear that the gun and ammunition were readily accessible to Revell during his stay in New Jersey and, thus, by the allegations of his own complaint, he was not within

17

the scope of § 926A. Dismissal of the § 926A claim was therefore proper.[13]

Turning to the summary judgment motion on Revell's Fourth Amendment claim, the depositions filed in support of that motion serve to confirm the conclusion that Revell had access to his gun and ammunition, contrary to § 926A's requirement.[14] Erickson testified that, under questioning, Revell said he had been forced to stay overnight at a hotel in Newark

―――――――――――――――

[13]The District Court dismissed Revell's § 926A claim based upon its conclusion that Revell was required to bring that claim pursuant to the Fourth Amendment. But, we "may affirm a result reached by the district court on reasons that differ so long as the record supports the judgment." *Johnson v. Orr*, 776 F.2d 75, 83 n.7 (3d Cir. 1985). Based solely on the allegations of the complaint, it is clear that Revell did not comply with § 926A, so we can affirm the District Court's dismissal on that basis alone. Given our disposition, we do not address the more difficult question of whether, if he had complied with § 926A, Revell would have been able to pursue a § 1983 claim based upon § 926A.

[14]Revell's amended complaint, which contains his Fourth Amendment claim, alleges the same facts as his original complaint, with the addition of one new allegation – that Revell did not open either of the locked hard cases while he was in New Jersey. The amended complaint also described in greater detail the inaccessibility of the luggage during the shuttle ride to and from the airport to the hotel.

because he had missed his flight. Erickson also testified that Revell acknowledged he "had the firearm with him when he left for Newark, that he had picked up the bag and taken it with him." (App. at 33.) Specifically, Erickson testified as follows:

> Q: He told you that he picked up the bag at Newark because he missed his flight, and went out of the airport, correct?
>
> A: Yes.
>
> Q: And did he tell you that he went to a hotel that night?
>
> A: Yes.

(*Id*.) Revell's own deposition further confirms that, upon missing his flight to Allentown, he retrieved his luggage, took a shuttle to a nearby hotel, and then returned to the airport the following morning with his bags.

Revell thus had access to his firearm and ammunition during his stay at the New Jersey hotel, whether or not he in fact accessed them and regardless of whether they were accessible while he was traveling by plane or van. That crucial fact takes Revell outside the scope of § 926A's protection, as the District Court correctly noted.[15] (App. at 77 ("[N]othing in the

---

[15]With regard to whether probable cause existed for his arrest, Revell attempts to raise factual disputes concerning what

19

pleadings or the record indicates that Revell's handgun and ammunition were anything but readily accessible to him during

---

Erickson knew at the time he arrested Revell, arguing that Erickson did not know what Revell did with his bag when he went to the hotel and that Erickson did not know whether he stayed overnight. First, Revell mischaracterizes the record, as Revell himself testified that he told the officers that he "had been forced to stay in the hotel." (App. at 37.) Second, even if Erickson were required to consider § 926A's impact in his probable cause analysis, an issue on which we express no holding, Revell told Erickson that he had picked up his luggage from the airport and went to a hotel for the night. A reasonable officer would be entitled to infer from Revell's statements that he had access to his firearm and ammunition while at the New Jersey hotel. Whether Revell in fact accessed them is irrelevant. Given our conclusion that Revell was not protected by § 926A when he was arrested in New Jersey, we need not address the interrelation between § 926A and probable cause. We do, however, note our concern with the implications of Revell's argument that § 926A requires an officer to "investigate the laws of the jurisdiction from which the traveler was traveling and the laws of the jurisdiction to which the traveler was going" prior to making an arrest. (Appellant's Reply Br. at 13.) It seems doubtful that, in passing § 926A, Congress intended to impose upon police officers such a potentially burdensome requirement. *See Torraco v. Port Auth. of N.Y. & N.J.*, 539 F. Supp. 2d 632, 644 (E.D.N.Y. 2008) ("[I]t is simply too much to read into § 926A a Congressional intent to require local police to have on-the-spot knowledge of the firearms laws of all 50 States.").

his overnight stay in New Jersey.").) Accordingly, Revell was subject to arrest for violating New Jersey's gun laws.[16] We will therefore affirm the District Court's grant of summary judgment on his Fourth Amendment claim.[17]

Although we conclude that Revell fell outside of § 926A's protection during his stay in New Jersey, we recognize that he had been placed in a difficult predicament through no fault of his own. However, Section 926 clearly requires the traveler to part ways with his weapon and ammunition during travel; it does not address this type of interrupted journey or what the traveler is to do in this situation. Stranded gun owners like Revell have the option of going to law enforcement representatives at an airport or to airport personnel before they retrieve their luggage. The careful owner will do so and explain

---

[16]To satisfy the Fourth Amendment, a warrantless arrest must be based on probable cause that a crime has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002). There is no question that Erickson observed Revell in possession of a firearm and hollow-point bullets in violation of New Jersey law.

[17]Because we conclude that Revell's weapon and ammunition were readily accessible to him, we need not address Revell's argument that § 926A should be broadly construed to "immunize[] non-vehicular transportation if the firearm is not readily accessible." (Appellant's Op. Br. at 32.) Nor do we reach the issue of qualified immunity.

21

his situation, requesting that his firearm and ammunition be held for him overnight.[18] While this no doubt adds to the inconvenience imposed upon the unfortunate traveler when his transportation plans go awry, it offers a reasonable means for a responsible gun owner to maintain the protection of Section 926 and prevent unexpected exposure to state and local gun regulations.

        B.      *Due Process*

        Revell also asserts that the District Court erroneously granted summary judgment on his due process claim. In order to determine whether an individual has been deprived of his property without due process "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). "This inquiry ... examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id.* Although a pre-deprivation hearing is generally required before a state seizes a person's property, "[i]n some circumstances ... the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128.

_____

    [18]Of course, this suggestion leaves unanswered the question of what the gun owner should do if the law enforcement officers decline to assist him. It may be hoped, however, that officers will not compound a blameless owner's problems in that way.

22

For example, in *Parratt v. Taylor*, and thereafter in *Hudson v. Palmer*, the Supreme Court held that, when a state officer randomly and without authorization departs from established state procedures, the state need only provide post-deprivation procedures. *Hudson*, 468 U.S. 517, 533 (1984); *Parratt*, 451 U.S. 527, 543 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986) (overruling *Parratt* to the extent it suggested that a constitutional injury could be established based on negligence). The Supreme Court held in *Parratt* that a state tort claim was an adequate remedy for a prisoner aggrieved by prison officials' negligent loss of his property, and in *Hudson* the Court held the same with respect to a prisoner whose property was intentionally destroyed by a prison guard.

The District Court relied on *Parratt* in deciding that Revell's failure to take advantage of available remedies, namely a state court lawsuit, warranted summary judgment on his due process claim. Revell argues that, because his deprivation was made pursuant to Port Authority policy as opposed to an unauthorized act, a state tort remedy is insufficient and that, instead, "there must be a statutory provision for a post-deprivation hearing to satisfy due process." (Appellant's Op. Br. at 25.) But, Revell's due process claim is not based on defendants' initial seizure of the property. Instead, in his opening brief, Revell clarified that his claim rests on the defendants' retention of his property after the charges against him had been dismissed and on their failure to provide him notice and an opportunity for a post-deprivation hearing. (Appellant's Op. Br. at 26 ("Revell should not have been deprived of the property after August 2, 2005 without being

23

provided constitutionally adequate notice and an opportunity for a post-deprivation hearing.").)  Revell has identified no policy requiring officers of the Port Authority to retain property that is no longer needed for a prosecution, and it is highly unlikely that any such policy exists.  Accordingly, the rationale of *Parratt* and *Hudson* does apply.  *See Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009) ("We have recognized that a civil cause of action for wrongful conversion of personal property under state law is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state officers." (internal quotations omitted)).

Revell cannot prevail on his due process claim if the state's post-deprivation procedures, including state tort remedies, are adequate.  He has failed to explain why New Jersey's state procedures to recover wrongfully seized property, such as the ability to move in the criminal action for return of his property or the ability to file a separate action for a writ of replevin, are insufficient.  *See State v. One 1986 Subaru*, 576 A.2d 859, 318 (N.J. 1990) (explaining that owner of seized property can file a replevin action or move to retrieve improperly seized property and "[b]ecause of the availability of [such] procedures ... , a claimant's inaction may weigh against a claim that his or her due-process rights have been violated"); *see also* N.J. Rule 3:5-7 (motion for return of property)[19] and

---

[19]Although Rule 3:5-7 directly speaks to the ability of a defendant to move for the return of property that was unlawfully seized, which Revell could have done in light of his claim that his arrest and the seizure of his property were unlawful, Revell

24

4:61-1 (replevin). Nor has Revell shown any entitlement to special notice of those procedures. *See City of W. Covina v. Perkins*, 525 U.S. 234, 236 (1999) (holding that due process clause does not "require[] a State or its local entities to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution"). Thus, his due process claim fails and summary judgment was warranted. *Cf. Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (rejecting plaintiff's procedural due process claim, when police retained plaintiff's weapons after seizing them because "[plaintiff] has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them.").

## IV.  Conclusion

Section 926A does not apply to Revell because his firearm and ammunition were readily accessible to him during his stay in New Jersey. That conclusion is fatal to his § 926A claim and the associated Fourth Amendment claim. We accordingly affirm the District Court's dismissal and grant of summary judgment, respectively, on those claims. We also affirm the District Court's grant of summary judgment on

---

may well have found a New Jersey court sympathetic to a motion under that Rule for the return of his property once the charges against him were dropped.

Revell's due process claim because he did not take advantage of state procedures available to him for the return of his property.