**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3613
_____

HAKIM BOND,
                                        Appellant

v.

VISIONQUEST; VISIONQUEST NATIONAL DIRECTOR;
MAJOR SMITH, UNIT DIRECTOR, COUNSELOR AND MEDICAL STAFF;
MR. MCGLAUGHLIN, ALL OF VISIONQUEST; THE CLARION HOSPITAL; THE
TREATMENT TEAM; DOCTOR PETER MEYER; THE CHILDRENS HOSPITAL OF
PHILADELPHIA; THE CITY OF PHILADELPHIA; THE PHILADELPHIA
DEPARTMENT OF HUMAN SERVICES DIRECTOR; THE DIRECTOR OF
THE YOUTH STUDY CENTER;  THE PHYSICIAN AND MEDICAL STAFF,
TO INCLUDE NURSES AND OTHER THERAPIST OR THE TREATMENT TEAM;
THE DIRECTOR OF COMMUNITY BEHAVIORAL HEALTH; AMANDA LATSHAW;
SABRINA BACKSTONE, OF COMMUNITY BEHAVIORAL HEALTH;
THE DIRECTOR; DR. JEROME VANCE; MR. DAVE ASAY, THERAPIST;
MR. DAVE GUYMAN, SUPERVISING THERAPIST; DR. THOMAS;
THE BENCHMARK BEHAVIORAL HEALTHSYSTEMS
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 08-cv-04527)
District Judge:  Honorable C. Darnell Jones, II
_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2011
_____

Before: SCIRICA, BARRY and VANASKIE, <u>Circuit Judges</u>

(Opinion Filed: February 7, 2011)

1

_____

OPINION
_____


BARRY, <u>Circuit Judge</u>

Hakim Bond appeals from an order of the District Court dismissing his complaint as time-barred and vacating a prior order to appoint counsel. For the reasons stated below, we will affirm.

## I. Background

Because we write solely for the benefit of the parties, we will only briefly recite the facts. Bond brought claims under 42 U.S.C. § 1983, as well as various state-law causes of action, alleging, among other things, that he was misdiagnosed, subjected to racism, and in many other ways severely mistreated while he was a minor under state custody and supervision. Bond named as defendants a host of state agencies, private institutions, and individuals. To name just a few, the defendants included VisionQuest National, Ltd. ("VisionQuest"), which Bond described as a "national corporate [juvenile] delinquent facility [which] utilizes extreme boot camp measures, and [which] imposes Indian culture and practices on youth." App. at 23 ¶ 5; Clarion Hospital, where Bond was treated; and the City of Philadelphia.

In March 2006, Bond, along with his father, Reginald Carter, filed a *pro se* complaint in the Western District of Pennsylvania, alleging essentially the same facts as

alleged here. On October 23, 2006, Bond filed a motion to withdraw the complaint, noting that Pennsylvania's statute of limitations permitted him to file a civil action until September 14, 2008, two years after his eighteenth birthday, and that Carter hoped to "gather the proper legal help" to pursue the case. *Id.* at 187. The complaint was dismissed without prejudice on January 16, 2007.

On September 17, 2008, Bond commenced the present action by filing a motion to proceed *in forma pauperis* ("IFP"). The motion was dated September 12, 2008, and date-stamped received by the District Court on September 17, 2008. Bond listed his address as what appears to be a private residence in Philadelphia. Bond's proposed complaint was attached to the IFP motion, and was dated September 12, 2008. The complaint also listed the same residential address in Philadelphia and stated, in the first line, that Bond "is a resident of Philadelphia, Pennsylvania." App. at 22. Significantly, attached as an exhibit to the complaint was a letter from Carter to Bond's former state-appointed attorneys dated September 16, 2008, and marked in handwriting, "Hand delivered 9/17/08." *Id.* at 36. On September 25, 2008, the Court granted Bond's IFP motion and ordered the complaint to be filed.

On December 12, 2008, Bond filed a motion for appointment of counsel, stating that "Plaintiff is currently incarcerated and finds it nearly impossible and quite difficult to work with his father . . . in pursuing this matter." *Id.* at 70. Clarion Hospital opposed Bond's motion, arguing that the complaint was untimely because it was filed after the

3

two-year statute of limitations for such actions under 42 Pa. Cons. Stat. § 5524. Clarion

Hospital also asked the Court to dismiss the case in its entirety due to the statute of

limitations barrier. Bond filed a reply to Clarion Hospital's motion, stating that "plaintiff

believes that his being late in this filing by a couple of days is forgivable, and ask [sic]

that the court makes an exception in this matter based on the need for fairness, justice,

and the fact that he and his father sought to bring this matter before the court, not being

ab[]le to obtain counsel . . . ." *Id.* at 100.

On February 6, 2009, the District Court granted Bond's motion for appointment of

counsel by referring the matter to the Prisoner Civil Rights Panel for the Eastern District

of Pennsylvania, which would seek counsel for Bond. The Court also placed Bond's case

on the "suspense" list. VisionQuest filed a motion to dismiss on February 9, 2009,

claiming that the action was barred by the statute of limitations, which ran on September

14, 2008, Bond's twentieth birthday. The City of Philadelphia filed a similar motion on

March 18, 2009.

On August 7, 2009, the District Court removed the case from suspense, vacated its prior

order granting Bond's motion for appointment of counsel, granted VisionQuest's and the

City of Philadelphia's motions to dismiss, dismissed all remaining motions as moot, and

dismissed Bond's claims against all defendants with prejudice. The Court stated that

Bond's complaint, filed September 17, 2008, was time-barred because the statute of

limitations ran on September 14, 2008. *Id.* at 6. It stated that Bond "was not a

4

prisoner at the time when he filed his Complaint, thus the 'prisoner mailbox rule' does not apply." *Id.* The Court noted that sometime after it referred the case to the Prisoner Civil Rights Panel, the Panel "informed the Court that Plaintiff was no longer incarcerated." *Id.* Accordingly, Bond's case was ineligible for submission to the Panel for referral to an attorney.

On December 31, 2009, we granted Bond's motion for appointment of appellate counsel, and directed appointed counsel to address: (1) whether the District Court adequately addressed the factors set forth in *Tabron v. Grace*, 6 F.3d 147, 155-58 (3d Cir. 1993), in denying Bond's motion for appointment of counsel; (2) whether Bond was incarcerated when he filed his complaint; and (3) whether the Court erred in dismissing Bond's complaint without considering whether there was any basis for tolling. We also directed counsel to include documents, including relevant mailing envelopes, demonstrating when the Court received the complaint. Appellees have submitted as part of the record a copy of a mailing envelope addressed to the Clerk of Court with a return address for Bond, care of his father, listing the same residential Philadelphia address that appeared on Bond's other documents. The envelope contains no postmark or postage, which suggests that a third person, possibly Bond's father, hand-delivered the IFP motion and complaint to the Court.

## II. Discussion[1]

We exercise *de novo* review over a district court's grant of a motion to dismiss. *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). We "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Revell v. Port Auth. of N.Y. and N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). We review a district court's decision declining to appoint counsel for abuse of discretion. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002).

Bond argues that that he was incarcerated when the IFP motion and complaint were filed and, thus, that he was entitled to the benefit of the prisoner mailbox rule and his September 17, 2008 filing was not time-barred. Bond's § 1983 and supplemental state-law claims are governed by Pennsylvania's two-year statute of limitations for personal injury claims. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000); 42 Pa. Cons. Stat. § 5524. Because Bond was a minor during the events described in his complaint, Pennsylvania's tolling statute permitted his complaint to be filed for two years after his eighteenth birthday, 42 Pa. Cons. Stat. § 5533(b), in his case, until September 14, 2008. Because September 14, 2008 fell on a Sunday, Bond had until Monday,

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

6

September 15, 2008 to file his complaint. *See* Fed. R. Civ. P. 6(a)(3).[2]

The Supreme Court first articulated the prisoner mailbox rule in *Houston v. Lack*, 487 U.S. 266 (1988), where it found that a notice of appeal was timely filed at the time that it was delivered to the prison authorities for forwarding to the court clerk. *Id.* at 276. Other circuits, as well as district courts within the Third Circuit, have extended this rule to *pro se* prisoner complaints. *See*, *e.g.*, *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002); *Smith v. Carroll*, 602 F. Supp. 2d 521, 526 n.7 (D. Del. 2009). So, too, will we for purposes of this appeal.

Bond argues that he was imprisoned when he filed his complaint. The District Court, however, was unaware of this when it dismissed the complaint. In response to our December 31, 2009 Order directing Bond's attorney to address whether Bond was incarcerated at the time he filed his complaint, Bond filed a two-page document which appears to show that he was released on bail from the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia on February 3, 2008, and re-admitted on February 8, 2008. He also points to his personal information on the Court's civil docket sheet, which lists his address as the Philadelphia Industrial Correctional Center ("PICC") and shows his prisoner number. Neither of these documents, however, establishes that Bond was

---

[2]  Certain appellees contend that Rule 6(a)(3) is not relevant to prisoners seeking to apply the prisoner mailbox rule, but they concede, for purposes of this appeal, that Bond had until September 15, 2008 to file his complaint.

imprisoned at the time he filed his complaint. The two-page document showing his intake at CFCF only establishes that he was imprisoned on February 8, 2008, not at the time he filed the complaint in September 2008. Further, the address listed on the docket sheet at the time of appeal only reflects his address at that time; it was not necessarily his address in September 2008.

But even assuming that Bond was incarcerated in September 2008, he is not entitled to the prisoner mailbox rule because there was no way for the District Court to have known that Bond was imprisoned. The addresses listed on Bond's complaint, his IFP motion, and the mailing envelope containing the motion and complaint all listed what appears to be a residential address. Nothing in the complaint or motion suggested that he was imprisoned at the time of filing.

Most damaging to Bond's argument is the letter attached to his complaint that was dated September 16, 2008, and marked "hand delivered" on September 17, 2008. If these dates are accurate, and there is no plausible reason to believe otherwise, then for Bond's complaint to have been mailed from prison, the complaint could not have been placed into the custody of prison officials for delivery to the District Court until, at the earliest, September 17, 2008. It is unlikely that this is the case, since the complaint was filed on that date. The more likely scenario, which is supported by the fact that the envelope containing the complaint had no date stamp or postage, is that Bond gave the complaint to a third party, possibly his father, to hand deliver to the clerk's office. In that case, he is

8

not entitled to the prisoner mailbox rule. *See Kapral v. United States*, 166 F.3d 565, 567-68 (3d Cir. 1999) (habeas motion filed by prisoner's attorney not entitled to prisoner mailbox rule); *Pearson v. Vaugh*, 984 F. Supp. 315, 316-17 (E.D. Pa. 1997).

Bond argues the applicability of a "presumption" that since his complaint is dated September 12, 2008, it was delivered to prison authorities prior to September 15, 2008, and, thus, complies with the prison mailbox rule. He cites to *United States v. Rinaldi*, where we deemed a prisoner's notice of appeal as timely based on the date listed on the notice of appeal, rather than the docketed date. 447 F.3d 192, 194 n.6 (3d Cir. 2006). Bond's argument, however, ignores the Supreme Court's observation in *Houston* that adopting a prisoner mailbox rule would not lead to disputes over the timing of a prisoner's filing because "prison authorities . . . have well-developed procedures for recording the date and time at which they receive papers for mailing and . . . can readily dispute a prisoner's assertions that he delivered the paper on a different date." 487 U.S. at 275. Here, Bond provides no evidence—and does not even directly state—that he provided the complaint to prison authorities to mail to the District Court.[3]

---

[3] We reject Bond's additional argument that the District Court erred by dismissing his complaint as untimely without notice to him and without an opportunity to file a response. First, Bond did respond to Clarion Hospital's motion stating that Bond's claims were time-barred, and never mentioned that he was imprisoned at the time he filed the complaint. Second, and more importantly, the provisions of 28 U.S.C. §§ 1915(e)(2)

We also reject Bond's argument that the District Court erred in vacating its order appointing him counsel because it relied on an erroneous finding of fact as to his imprisonment status and because it failed to consider the factors set forth in *Tabron*. Even assuming that the Court relied on incorrect information, Bond cannot satisfy the test for appointment of counsel. *Tabron* requires a district court to first determine whether a case has some merit. Here, even though the Court did not mention *Tabron* or explicitly apply its factors, it implicitly found that because Bond's complaint was time-barred, he could not overcome that important threshold requirement. *See*, *e.g.*, *Gallicchio v. Bonner*, No. 10-405 (SRC)(MAS), 2010 WL 2348705, at *1-2 (D.N.J. June 9, 2010) (denying appointment of *pro bono* counsel because petitioner's claims were time-barred). Because the complaint was time-barred, error in relying on incorrect information about whether or not Bond was imprisoned was harmless. It was appropriate for the Court to vacate the order appointing counsel.

and 1915A instruct a court to dismiss an IFP case "at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *id.* § 1915A. The Court fairly believed that Bond's claim was time-barred, and, thus, did not err in dismissing the case without holding an evidentiary hearing on Bond's imprisonment status. A court cannot be expected to guess at the reasons to apply a tolling doctrine when no facts in support of tolling have been provided by the claimant, even in *pro se* cases.

10

**III.     Conclusion**

We will affirm the order of the District Court.