JORDAN, Circuit Judge,
concurring in the judgment.
My colleagues in the Majority have set forth a plausible reading of § 926A, but I am not as convinced as they are that the statute is clearly limited to vehicular travel. Here is the language again:
Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver’s compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.
18 U.S.C. § 926A.
Awkwardly worded though the statute may be, it can reasonably be construed as a comprehensive defense for people traveling with firearms. Of particular importance in this case, § 926A provides that the transported firearms must not be either “readily accessible” or “directly accessible from the passenger compartment of such transporting vehicle.” Id. The disjunctive “or” can be read as providing two separate limitations on the transportation of a firearm. That view is supported by contrasting § 926A’s current language with its prior version, which provided:
Any person not prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport an unloaded, not readily accessible firearm in interstate commerce notwithstanding any provision of any legislation enacted, or any rule or regulation prescribed by any State or political subdivision thereof.
Pub.L. 99-308, 100 Stat. 449 (May 19, 1986). The “not readily accessible” requirement has remained in the current version, with the addition of the not “directly accessible” requirement when transporting a firearm in a passenger vehicle. *259 That addition thus can be seen as reinforcing the conclusion that, while the words “directly accessible” do relate specifically to vehicular travel, the words “readily accessible” do not.[1]
The Majority calls that reading of the statute “strained.” (Maj. Op. at 255.) I disagree. There are grammatical difficulties with the statute, no matter how it is approached, but that does not make the broader reading untenable.[2] Indeed, the disjunctive clauses in § 926A are each introduced separately by the word “is” (“is readily accessible or is directly accessible from the passenger compartment”). The reading the Majority adopts — which ties “readily accessible” to the passenger compartment of a vehicle — would be more persuasive if the statute were phrased with a single copula, thus: “... neither the firearm nor any ammunition being transported is readily or directly accessible from the passenger compartment of such transporting vehicle.” But that is not how Congress wrote the statute, and, despite my colleagues insistence to the contrary, their reading renders the words “directly accessible” superfluous.
Although there is legislative history supporting the Majority’s narrow reading of the protection afforded by § 926A, there are other portions of the legislative history that support a broader reach for the statute.[3] Given such conflicting history, resort *260 to the legislative record is not particularly helpful. Cf. Rust v. Sullivan, 500 U.S. 173, 185 & n. 3, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (eschewing reliance on legislative history that was conflicting and ambiguous).
What can be helpful is a consideration of how others have read the statutory text. The availability of a broader reading of the statute is apparent from the Second Circuit’s competing opinions in Torraco v. Port Authority of New York & New Jersey, 615 F.3d 129 (2d Cir.2010). The majority opinion in that case held that § 926A’s language did not indicate a congressional intent to make the statute re-dressable under 42 U.S.C. § 1983. Id. at 139. The concurrence, by contrast, indicated that the statutory language could be read to evince such an intent but that the remedial scheme associated with § 926A was such that Congress had foreclosed recourse to § 1983 by implication. Id. at 152. Significantly, no one on the Torraco panel concluded that § 926A is limited to vehicular travel. One may take issue with the conclusions they reached (and they disagreed among themselves), but those judges were not indulging in an outlandish reading of the statute. Nor was the District Court whose reasoning we now have under review. That Court concluded, in keeping with the Torraco concurrence, that although § 926A’s language could be *261 read to permit a § 1983 action, Congress had impliedly foreclosed any such private remedy. The Court did not adopt an “only for vehicular travelers” view of § 926A.
In short, § 926A is not the plain and unambiguous statute that the Majority portrays, and it is not a stretch to think that it was meant to protect interstate travel by many means, not just in private vehicles.[4] Rather than dive into the difficulty of interpreting the scope of § 926A’s coverage, which is an unnecessary adventure at present, I would affirm the District Court’s conclusion that § 926A simply does not support a claim for relief under § 1983.
As explained by the Majority, § 1983 provides a cause of action against anyone who, acting under color of state law, deprives a person “of any rights, privileges, or immunities secured by the Constitution and laws.” 42 U.S.C. § 1983. Redress under § 1983 is limited, however, to a “violation of a federal right, not merely a violation of federal law,” and courts must determine whether a federal statute confers a redressable federal “right.” Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353,137 L.Ed.2d 569 (1997) (emphasis omitted). Again as the Majority notes, the Supreme Court’s decision in Blessing lays out three factors to consider when determining whether “[a] statute creates enforceable rights, privileges, or immunities within the meaning of § 1983.” Pa. Pharmacists Ass’n v. Houstoun, 283 F.3d 531, 535 (3d Cir.2002) (internal quotation marks omitted). First, “Congress must have intended that the provision in question benefit the plaintiff’; second “the plaintiff must demonstrate that the right assertedly protected by the statute is not so ‘vague and amorphous’ that its enforcement would strain judicial competence”; and third “the statute must unambiguously impose a binding obligation on the States ... [;] the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.” Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353. In Gonzaga University v. Doe, the Supreme Court explained that a plaintiff cannot succeed just by falling within the general zone of interest that the statute is intended to protect. 536 U.S. 273, 283,122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Rather, the statute must “unambiguously confer[ ] [a] right to support a cause of action *262 brought under § 1983.” Id. We have interpreted Gonzaga and Blessing to require, in addition to satisfaction of the three Blessing factors, that a statute contain “rights-creating language which clearly imparts an individual entitlement with an unmistakable focus on the benefitted class.” Grammer v. John J. Kane Reg’l Ctrs.-Glen Hazel, 570 F.3d 520, 526 (3d Cir.2009) (internal quotation marks omitted).
The paradigmatic examples of such language are found in Title VI of the Civil Rights Act of 1964, which states that “No person in the United States shall ... be subjected to discrimination under any program or activity receiving Federal financial assistance” on the basis of race, color, or national origin, 42 U.S.C. § 2000d, and Title IX of the Education Amendments of 1972, which states that “No person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance,” 20 U.S.C. § 1681(a). The inquiry into whether Congress intended to create a federal right redressable under § 1983 overlaps and is informed by the precedents on implied rights of action. Gonzaga, 536 U.S. at 284, 122 S.Ct. 2268. For example, in Gonzaga, the Supreme Court examined the Family Educational Rights and Privacy Act of 1974 (“FERPA”), which states that “[n]o funds shall be made available” to any “educational agency or institution,” which has a prohibited “policy or practice.” 20 U.S.C. § 1232g(b)(Z). The Court concluded that that language did not contain sufficient rights-creating language, Gonzaga, 536 U.S. at 287, 122 S.Ct. 2268, and thus did not create rights enforceable under § 1983. Id. at 290,122 S.Ct. 2268.
I am unconvinced that § 926A contains the requisite “rights-creating language” to “clearly impart[ ] an individual entitlement with an unmistakable focus on the benefit-ted class.” Grammer, 570 F.3d at 526. While the statute does speak specifically of benefiting a person, see 18 U.S.C. § 926A (stating that “any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled” to transport that firearm), there is a crucial difference between the language of § 926A and the language used in Titles VI and IX. Section 926A appears to be framed only as a legal defense to a state prosecution for illegal firearm possession. Its location in the criminal code indicates that Congress did not intend to confer upon travelers a new federal cause of action, but wanted only to shield travelers from a certain variety of criminal liability. It is noteworthy in this regard that in 18 U.S.C. § 925A, a statute under the same title and one section away from § 926A, Congress provided a specific civil remedy to people who are subject to the “erroneous denial of [a] firearm,” saying, that such a person '
may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States,' as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be.
18 U.S.C. § 925A(2). So, Congress knew how to be unambiguous about conferring new private rights of action in this field, when it wanted to grant them.
Moreover, the tremendous impracticality of subjecting local law enforcement officials to liability on the basis of § 926A militates against any conclusion that a re-dressable substantive right was intended by Congress. As we explained the last time this case was before us, threatening police officers with § 1983 liability would force them to “investigate the laws of the *263 jurisdiction from which the traveler was traveling and the laws of the jurisdiction to which the traveler was going prior to making an arrest.” Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 137 n. 15 (3d Cir.2010) (internal quotation marks omitted). Without some clearer expression of congressional intent, I cannot conclude that § 926A was meant to impose on the police such a potentially burdensome requirement, with the risk of civil liability hanging over them. Cf Gonzaga, 536 U.S. at 286, 122 S.Ct. 2268 (“[Wjhere the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit ... under § 1983.”).
Because Congress did not, in enacting § 926A, unambiguously confer upon travelers any right redressable under § 1983, I would affirm the decision of the District Court on that basis, and on that basis alone. I therefore concur in the judgment.

. What the Majority calls the "Provided clause” — that is, the last sentence of the statute, which states: "Provided, That in the case of a vehicle without a compartment separate from the driver’s compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console,” 18 U.S.C. § 926A — does not foreclose the broader reading noted here. That clause can be understood as merely an additional limitation if the transportation of a firearm occurs in a vehicle without a compartment separate from the driver’s compartment.

. The Majority focuses on the word "such” in "such transporting vehicle” (Maj. Op. at 255 n. 4,), saying that "such” is appropriately used only when there has been a previous reference to "a category of persons or things.” {Id. (internal quotation marks omitted).) My colleagues therefore contend that "the only possible antecedent to which 'such transporting vehicle’ could refer is the transporting of a firearm mentioned in the main clause of the statute.” {Id.) But there is no antecedent category of persons or things in the statute. The word "vehicle” appears nowhere before the phrase "such transporting vehicle." That deficiency leads to at least two interpretive possibilities: (1) we insert the word “vehicle” into the statutory language before introducing "such transporting vehicle," the approach the Majority favors, or (2) we conclude that Congress failed to follow the proper rules of grammatical construction when using “such.” Either is a possible reading of the statutory language, and the latter is no more strained than the former. Rather than wrestle with grammar, I believe, as discussed below, that we should focus on the one thing that is clear about § 926A: it does not permit § 1983 liability.

.Certain parts of the legislative history cast the protection more broadly, speaking of "travel” generally, rather than specifically of vehicles. See 132 Cong. Rec. H4102-03 (Jun 24, 1986) (statement of Rep. Hughes) (“[T]he purpose which everyone supported was to allow travelers who lawfully possessed weapons to travel to hunting grounds in other States....”); see also 131 Cong. Rec. S91 OI-OS (July 9, 1985) (statement of Sen. Dole) (explaining that § 926A was necessary because, "[ujnder current law, such persons can be prosecuted under some State and local gun laws even where they are simply on a hunting trip, traveling to a sporting event, or moving”). The Majority attempts to discount that history as irrelevant because it pertains to the previous version of the statute. (Maj. Op. at 257 n. 5.) Not so. The legislative history for § 926A indicates that its current language and the previous language were discussed at the same time and, in fact, before the previous language became law, amendments had already been proposed. See, e.g., 132 Cong. Rec. S5358-04 (May 6, 1986) (statement of Sen. Hatch) (explaining that amendments to the previous version of § 926A would not compromise its substance); 131 Cong. Rec. S9101-05 (July 9, 1985) (statement of Sen. *260 Symms) (discussing proposed amendments to the previous version of § 926A, which had not yet been passed). Moreover, the legislative history the Majority leans on is from a single member of Congress, which is something we have traditionally been careful to eschew. See In re Channel Home Ctrs., Inc., 989 F.2d 682, 685 n. 2 (3d Cir.1993) (“[W]e refuse to attribute so much significance to a single word uttered by a single member of Congress, even one in a position of particular authority with respect to the legislation in question.”); GTE Sylvania, Inc. v. Consumer Prod. Safety Comm'n, 598 F.2d 790, 811 (3d Cir.1979) ("It goes without saying that the views of a single member of Congress concerning the appropriate interpretation of a statutory provision passed some years earlier are not disposi-tive.”). Therefore, instead of looking at the previous statutory language as its own piece of legislation, it is more appropriate in this particular case to view § 926A's legislative history as an amalgamation of the debates from both the current § 926A and its previous version. As the Majority notes, the congressional debates from as far back as 1984 discussed vehicular travel. (Maj. Op. at 257 n. 5.) That, however, does nothing to add clarity to § 926A’s meaning. It arguably does the opposite, because the more broadly worded version of § 926A was enacted after those 1984 debates. Given the subsequent legislative history I have noted here, it is certainly ambiguous whether Congress meant to limit § 926A, or whether it sought a broader application to planes, trains, and automobiles.
In fact, the Majority concedes that § 926A can cover travel by planes, trains, and automobiles. (Maj. Op. at 255 n. 3.) That concession leads to a puzzlement: given the Majority’s interpretation of § 926A, how does one get to the airport or train station, check one’s luggage containing a firearm, but still come under the protection of § 926A? It may be easy to say, as the government did during oral argument, that travelling by plane is permissible, as long as the airport the traveler is departing from is within a state in which he is permitted to carry a firearm. But that hardly seems to be the purpose of the statute. For if that were the case, the statute would be of very limited utility, as air passengers were never likely to face prosecution by the states whose air space they traversed. The purpose of the statute seems more likely to be the protection of, for example, a traveler who lives in Easton, Pennsylvania, and wishes to go hunting in Montana. The closest place likely to offer a variety of flights is not in the traveler’s home state, but is in New Jersey, at the Newark Liberty International Airport. Accepting the Majority's concession, but not its statutory interpretation, that traveler comes within § 926A’s scope. But if the Majority’s statutory interpretation is controlling, that traveler faces prosecution when attempting to make his trip, unless he has a carry permit in New Jersey. Despite the Majority’s disclaimer, its interpretation of § 926A appears to effectively limit the statutory protection to travel by private vehicles.

. See supra note 3. I note that the interpretation the Majority proposes is difficult to reconcile with our previous decision in this very case. Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 137 (3d Cir.2010). Specifically, Revell was delayed in traveling from Salt Lake City, Utah, to Allentown, Pennsylvania, and was forced to stay overnight in a hotel in Newark, New Jersey. Id. at 130-31. Within his luggage, which he collected at Newark Airport after realizing he would have to stay overnight, was a firearm in a locked container, as well as hollow-point ammunition, also in a locked container. Id. at 131. After returning to the airport the next day, he was arrested by the Port Authority for carrying a firearm without a license, in violation of New Jersey law. Id. He brought suit and sought redress under § 1983. We held that he did not come within the ambit of § 926A’s protection because he had his firearm and ammunition in his luggage, which accompanied him to his hotel room. Id. at 139. "Revell thus had access to his firearm and ammunition during his stay at the New Jersey hotel, whether or not he in fact accesséd them and regardless of whether they were accessible while he was traveling by plane or van. That crucial fact takes Revell outside the scope of § 926A's protection.” Id. at 137. We thus concluded that it was the prolonged time Re-vell had with his luggage that brought him outside of § 926A's protection because he had ready access to his firearm. Under the Majority’s interpretation of § 926A, our decision in Revell should not have hinged upon Revell spending the night in his hotel with his suitcase; we should have concluded that, as soon as he was outside of an automobile, he was outside the protection of § 926A. But that is not the interpretative route we took.