NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2149
_____

FRANCISCO MUNOZ,
                                        Appellant

v.

THE CITY OF UNION CITY;
BRIAN P. STACK, individually and as Mayor of the City of Union City;
MARTIN MARTINETTI, individually and as Building Director of the City of Union
City;
NACIREMA ENVIRONMENTAL SERVICES INC; JOHN DOE (1 TO 20),
a fictitious designation whether a person, male or female and/or a business
entity, association, partnership or corporation
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Civ. Action No. 08-cv-5057)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2012
_____

Before: FISHER, GREENAWAY, JR., and ALDISERT, *Circuit Judges*.

(Opinion Filed: May 11, 2012)

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

Francisco Munoz ("Munoz") appeals the March 28, 2011 Order of the District Court denying his motion for partial summary judgment and granting summary judgment in favor of Union City, New Jersey; Union City Mayor Brian P. Stack; Union City Construction Code Official Martin Martinetti (collectively, "City Appellees"); and Nacirema Environmental Services, Inc. (together, "Appellees"). For the following reasons, we will affirm the District Court's Order.

## I.    BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

In the early morning hours of September 9, 2006, a fire was reported in a building located at 1813 Bergenline Avenue in Union City, New Jersey (the "Building"). The Building was a multi-family, three-story dwelling owned by Munoz. North Hudson Regional Fire and Rescue was the first firefighting company to respond to the call. Upon arrival, several firefighters entered the burning structure. As the intensity and breadth of the fire progressed, additional alarms were put out, and the evacuation of emergency

2

personnel inside the building was ordered. After battling the fire for almost two hours, the fire was brought under control at approximately 7:00 a.m. that morning.[1]

Munoz was not at the scene when the fire began. He first received notification of the fire between 5:00 and 6:00 a.m., while at his apartment. After unsuccessfully attempting to get within close proximity of the Building, Munoz returned to his apartment and retained New Jersey Public Adjusters, Inc. to aid him in assessing his losses as a result of the fire. At some point thereafter, Munoz left his apartment and was allowed to approach the Building to be interviewed by emergency personnel at the scene.

At approximately 10:00 a.m., Martin Martinetti ("Martinetti"), Union City's Construction Code Official, arrived on scene to assess the damage caused by the fire. Martinetti believed that the structural integrity of the Building was so compromised that he could not enter the Building. He proceeded to the upper floors of the adjacent building and peered out on the damaged structure. Martinetti observed that the majority of the Building's roof had collapsed and that the floors were in the process of collapsing.

Martinetti determined that the Building was structurally unsafe and needed to be immediately demolished. Martinetti informed Munoz in the presence of Ralph Affuso, Munoz's insurance adjuster; Scott Sandman, the Deputy Director of Parks for Union City; and one of Munoz's sons that the Building must be demolished. Around this time, Martinetti posted a notice of unsafe structure on the Building, in accordance with N.J. Admin. Code § 5:23-2.32(b)(1). Martinetti claims that he told Munoz that Munoz could

---

[1] Sadly, the blaze claimed the life of North Hudson Acting Fire Chief Vincent Neglia.

3

retain a contractor to perform the demolition or Union City would retain one and place a tax lien on the property in the amount of the demolition costs. According to Martinetti, Munoz informed him that he (Martinetti) could take whatever actions were necessary.

Martinetti called several demolition companies. Nacirema Environmental Services, Inc. ("Nacirema") was the first company to respond. Affuso had dealt with Nacirema in the past and determined that Nacirema would be an appropriate contractor to perform the demolition. Nacirema was hired. The razing process began sometime after 4:00 p.m. on September 9, 2006 and was completed the next day. Contrary to Martinetti's viewpoint, Munoz claims that he never received oral or written notification that the Building needed to be demolished and first learned of the demolition approximately three to four days after Nacirema performed the razing.

Four due process hearings were held subsequent to the demolition—three in 2007 and one in 2008. Lane J. Biviano, Esq. was the hearing officer who conducted the proceedings. All parties participated fully. In a July 16, 2008 letter, Biviano submitted his findings. Biviano concluded that Munoz received sufficient oral notice of the impending demolition, prior to the Building being razed. As such, Biviano found that Munoz was required to pay $76,767.75 in total costs. Munoz did not appeal Biviano's decision, which was adopted by Union City's Board of Commissioners.

On September 5, 2008, Munoz filed suit in New Jersey state court. Munoz alleged numerous federal constitutional violations, pursuant to 42 U.S.C. § 1983, as well as violations of New Jersey's constitution and state law. The essence of Munoz's claims is that his Building did not require demolition and, in any event, Appellees failed to follow

4

required protocol before razing the structure. After answering the complaint, the City Appellees removed the case to the District Court. All parties moved for summary judgment. On March 28, 2011, the District Court granted City Appellees' and Nacirema's motions for summary judgment, in a telephonic ruling. Munoz filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

City Appellees removed the case to the District Court under 28 U.S.C. § 1441, pursuant to federal question jurisdiction. The District Court, therefore, had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment, *Doe v. Luzerne Cnty.*, 660 F.3d 169, 174 (3d Cir. 2011) (citation omitted), including over determinations of qualified immunity, *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011) (citation omitted).

## III. ANALYSIS

To succeed on a claim brought under 42 U.S.C. § 1983, the "plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citation omitted). In particular, the plaintiff must prove two elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted).

5

The District Court addressed each of Munoz's § 1983 claims individually as to each Appellee. We shall employ the same analytical structure.

**A.    Martinetti**

Munoz asserted a claim against Martinetti, pursuant to 42 U.S.C. § 1983, on two theories. First, Munoz contends that Martinetti violated his procedural due process rights by failing to notify him before Martinetti made the decision to demolish the Building. Second, Munoz argues that Martinetti's decision to demolish the Building constituted a taking in violation of the Fifth Amendment. We agree with the District Court that Martinetti is entitled to qualified immunity under both theories. We will affirm the grant of summary judgment in favor of Martinetti.

"The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Martinetti is entitled to qualified immunity unless Munoz can demonstrate: (1) a violation of his constitutional rights; and (2) the right was clearly established, such that no reasonable official in Martinetti's position would have believed that Martinetti's conduct was constitutional. *Id.* Munoz cannot prevail on either prong.

*1.    Munoz's Constitutional Rights Were Not Violated*

Munoz has alleged violations of both the Due Process Clause and the Takings Clause. We begin first with Munoz's procedural due process claim.

6

A plaintiff asserting the deprivation of procedural due process rights "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citation and internal quotation marks omitted). Because Martinetti assumes, *arguendo*, in his brief that Munoz has been deprived of a protected property interest, we focus our inquiry on the second prong.

While a due process hearing ordinarily should occur before an individual is deprived of his property, "in special circumstances, a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). "Where there is 'the necessity of quick action by the State,' or where 'providing any meaningful pre[-]deprivation process' would be impractical, the Government is relieved of the usual obligation to provide a pre[-]deprivation hearing." *Id.* (quoting *Parratt*, 451 U.S. at 539).

Neither side disputes that Munoz did not receive a due process hearing prior to his Building being demolished. Of course, that is not dispositive. We must determine: (1) whether a pre-deprivation hearing was required; and (2) if not, whether the State's post-deprivation hearings were sufficient. *See Elsmere Park Club*, 542 F.3d at 417.

7

As to the first issue, we agree with Martinetti that the Building's structural instability created an exigent circumstance that warranted immediate and decisive action. The New Jersey administrative code contemplates such an emergency situation:

> When, in the opinion of the construction official, there is actual and immediate danger of collapse or failure of a building or structure or any part thereof which would endanger life, the construction official shall cause the necessary work to be done to render such building or structure or part thereof temporarily safe, whether or not the legal procedure herein has been instituted. Such work may include such demolition as may be necessary in order to eliminate any actual and immediate danger to human life; provided, however, that any demolition work shall not commence until at least 24 hours following service of notice of the pending demolition upon the owner, unless such service is not possible because the identity or the address of the owner cannot be determined from public records. Upon expiration of the 24-hour period, demolition may proceed unless stayed by order of the Superior Court.

N.J. Admin. Code § 5:23-2.32(b)(2).

Responsibility for executing this emergency mandate provision on September 9, 2006 lay with Martinetti, Union City's Construction Code Official. Based on his professional expertise and judgment, Martinetti determined that the fire had significantly compromised the structural integrity of the Building. Martinetti concluded that pressing safety concerns required the Building to be demolished as soon as possible. We find nothing in the record to undermine the propriety of Martinetti's decision.[2] He acted

---

[2] Munoz would have this Court repudiate Martinetti's decision based on Munoz's own interpretation of photographs of the fire damage, the statements of tenants who lived in the Building, and the investigation report filed by the Hudson County Prosecutor's Office. However, the common deficiency each of these sources suffers from is the lack of professional expertise in the field of assessing the architectural integrity of a structure.

based on "the necessity of quick action[,]" *Parratt*, 451 U.S. at 539, which obviated the need for a pre-deprivation hearing.[3]

Turning to the second prong of our inquiry, we conclude that Munoz received an adequate post-deprivation due process hearing to challenge all aspects regarding the demolition of the Building. Union City retained Biviano to preside over these hearings. Four hearings were held, in total, addressing both the costs associated with the demolition and the procedure by which Munoz was notified of the necessary demolition.[4] On July 16, 2008, Biviano submitted his findings, concluding that Munoz received adequate notice of the demolition under New Jersey law and that Munoz was responsible for costs related to the demolition.[5]

---

We cannot give credence to the observations of lay individuals in a field dependent on the expertise of licensed individuals regarding matters of public safety.

[3] The fact that Martinetti commenced demolition prior to the expiration of New Jersey's 24-hour notice period is inconsequential. Even if this failure rendered Martinetti "without authorization[,] . . . the state need only [have] provide[d] post-deprivation procedures." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir. 2010) (noting that post-deprivation proceedings can remedy the effects of a state official who acts without authority). Moreover, we are not guided by state law in determining whether Munoz has alleged a violation of his due process rights under § 1983. *See Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 193 n.6 (3d Cir. 2009). Although, it is worth noting, as Biviano concluded in his findings, that Martinetti orally informed Munoz that the Building needed to be demolished, to which Munoz responded by authorizing Martinetti to take whatever action was necessary.

[4] Munoz alleges that the hearings were intended to address only the costs associated with the demolition and not any due process considerations. This assertion is controverted by the briefing submitted in connection with the hearings as well as Biviano's findings in which he addressed the due process issue.

[5] As Biviano noted, his ability to render a final decision was repeatedly delayed by counsels' requests for adjournments and additional briefing, as well as the availability of witnesses.

9

The post-deprivation procedure followed here was sufficient to satisfy the requirements of due process. Although not discussed by the District Court, the exigent circumstances that obviated the need for a pre-deprivation hearing, coupled with the adequacy of the post-deprivation hearing, is sufficient to support the District Court's grant of summary judgment to Martinetti on Munoz's procedural due process claim.

Munoz also asserted a § 1983 claim against Martinetti for an alleged violation of his Fifth Amendment rights. "The Takings Clause of the Fifth Amendment prohibits the federal government from taking private property for public use without providing just compensation." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012) (citing U.S. Const. amend. V). This applies with equal force through the Fourteenth Amendment where the state is the government actor. *Id.*

Munoz argues that the demolition of the Building eviscerated the property's intended purpose of providing rental income. But the Takings Clause asks not whether the plaintiff's most profitable use of the property has been destroyed. A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. *See Andrus v. Allard*, 444 U.S. 51, 65-66 (1979). Munoz concedes that he retains a possessory interest in the property. Indeed, Munoz is still entitled to put the property to any number of beneficial uses. The record reflects that Munoz simply lacks sufficient funds to do so, at present. Even if Martinetti was without authority to order the demolition, Munoz's continuing possessory interest in the property prevents him from establishing a Takings Clause violation.

10

### 2. *Martinetti Acted Reasonably*

Munoz also cannot demonstrate that no reasonable official would have believed that Martinetti's decision to demolish the Building was a reasonable one. Given that the Building's structural instability posed an imminent threat to public safety, we agree with the District Court that Martinetti acted reasonably in ordering the Building to be demolished.

### B. Union City

Munoz similarly alleges claims of procedural due process and takings violations against Union City. A municipality may be liable under § 1983 where it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691-92 (1978)). As an initial matter, municipal liability cannot attach under § 1983 where the government actor did not violate the plaintiff's constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because we agree with the District Court that Martinetti did not violate Munoz's constitutional rights, we will affirm the District Court's grant of summary judgment in favor of Union City.

### C. Mayor Stack

Munoz also brought a § 1983 claim against Mayor Stack. The District Court concluded that Munoz improperly sought to attribute liability to Mayor Stack based solely on Mayor Stack's supervisory authority over Martinetti. We agree. We will

11

affirm that portion of the District Court's Order granting summary judgment in favor of Mayor Stack.

Mayor Stack is the Commissioner of Public Safety for Union City. The Construction Department is one of many departments that falls within the purview of Public Safety. Martinetti is the Construction Code Official who works within the Construction Department. Munoz's sole argument as to Mayor Stack is that he failed to properly supervise Martinetti by not promulgating a policy that would have prevented Martinetti from ordering an unwarranted demolition.

The theory of *respondeat superior* cannot support a claim of liability under § 1983. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Although Munoz claims that his failure to supervise argument is distinct from liability premised on *respondeat superior*, we can discern no difference. Aside from the fact that the demolition here was proper, absent any evidence that Mayor Stack "participated in violating [Munoz's] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations[,]" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (internal quotation marks and citation omitted), Munoz's theory of liability is indistinguishable from *respondeat superior*. Because Munoz has produced no facts demonstrating Mayor Stack's personal involvement, the District Court's grant of summary judgment in favor of Mayor Stack was appropriate.

12

### D. Nacirema Environmental Services, Inc.

Finally, we address Munoz's § 1983 claim against Nacirema. We will affirm the District Court's grant of summary judgment in favor of Nacirema.

Munoz asserts in his opening brief that Nacirema is liable only for negligent demolition and conversion, both violations of New Jersey state law. Perhaps recognizing that § 1983 liability cannot be premised on violations purely of state law, *see Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256 (3d Cir. 2007), in his reply brief, Munoz asserts for the first time that Nacirema is liable under § 1983 as an instrumentality of Union City.

We generally do not consider arguments raised for the first time on appeal in a reply brief. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204 n.29 (3d Cir. 1990). No reason is present here to deviate from this rule; Munoz has waived the argument that Nacirema is liable under § 1983.[6]

Even if we were to look past Munoz's waiver, the argument fails on the merits. "Although it is possible for a private party to violate an individual's § 1983 rights, the individual alleging such a violation is not relieved of the obligation to establish that the private party acted under color of state law." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d

---

[6] This Court's finding of waiver is equally supported by Munoz's cursory, one-sentence argument regarding Nacirema's liability, devoid of any legal support. This opaque reference is insufficient to preserve the argument on appeal. *Cf. United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) ("This one-sentence footnote falls far short of meeting the requirement that an appellant raise an issue in his opening brief or else waive the issue on appeal.").

Cir. 1993).[7] This requires the plaintiff to show "a sufficiently close nexus" between the actions of the private party and the State to warrant treating the actions as those of the State. *Id.* (citation omitted). We have outlined three circumstances in which the requisite nexus exists: (1) the private party performed a function typically performed by the State; (2) the private party acted in concert with the State; or (3) the State has become interdependent with the private party. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted).

We can discern no fact in the record to support a finding that Nacirema was a state actor under any of these circumstances. Munoz baldly alleges that Nacirema, a private contractor, acted as the agent of Union City in performing the demolition and is liable for constitutional violations to the extent Union City is liable. The only supporting fact that Munoz points to is the contract between Union City and Nacirema for the demolition. Simply because Nacirema performed pursuant to a public contract does not suffice to establish state action. *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 76 (3d Cir. 1991).[8]

---

[7] Moreover, as the Supreme Court recently held, a private party acting at the behest of the state can invoke qualified immunity. *Filarsky v. Delia*, 132 S. Ct. 1657, 1666 (2012) (establishing that a private individual retained by the state can seek qualified immunity under § 1983).

[8] The District Court granted summary judgment regarding all federal claims but failed to comment on its discretion to exercise supplemental jurisdiction over the state law claims. The District Court would have been required to decline to exercise supplemental jurisdiction, absent a countervailing reason, given that the District Court disposed of all federal claims providing it with original jurisdiction. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citations omitted). Despite the District Court's omission, we presume that it declined to exercise pendant jurisdiction because Munoz has pointed to no factor counseling in favor of the District Court

14

## IV.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's Order.

---

retaining jurisdiction over the supplemental state law claims.  *See Hedges v. Musco*, 204 F.3d 109, 122-23 (3d Cir. 2000) (noting that "considerations of judicial economy, convenience, and fairness to the parties" are appropriate justifications for a district court to exercise supplemental jurisdiction).  Indeed, neither party even raised this issue in their briefing.  This conclusion is bolstered by the District Court's statement on the record that it was "going to dismiss the case."  (App. 38.)  Accordingly, we perceive no abuse of discretion.  *See Hedges*, 204 F.3d at 123-24.