IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Properties, Inc.,     :
                Appellant     :
                          :
        v.               :   No. 1576 C.D. 2024
                          :   Argued: December 8, 2025
City of Allentown             :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge (P.)
             HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED: February 13, 2026

Lehigh Valley Properties, Inc. (LVP) appeals from the October 21, 2024 Order of the Court of Common Pleas of Lehigh County (trial court) granting the Motion for Summary Judgment (Motion) filed by the City of Allentown (City). Because we conclude that the trial court properly entered summary judgment in the City's favor as to all four counts of LVP's Third Amended Complaint, we affirm the trial court's Order.

## I. BACKGROUND

This Court previously summarized the facts underlying this case as follows:

[LVP] is the owner of 2.06 acres of vacant land located at 901 North Ivy Street, Allentown, Pennsylvania (Property) in the General Industrial District (I3 District) under the City's Zoning Ordinance (Ordinance). In 2018, [LVP] filed a zoning application for the construction of two double-faced billboards on the Property – one static and the other digital. Billboards are permitted in the I3 District, but variances were needed to comply with the Ordinance's distance requirements. Specifically, [LVP] proposed to place the static billboard 79 feet from a residential district, when the Ordinance requires at least 300 feet. [LVP] proposed to place the digital billboard 571 feet from

another off-premises digital billboard, which was installed by the City, when the Ordinance requires 1,000 feet.[1]  The zoning application was denied.

*Lehigh Valley Props., Inc. v. City of Allentown Zoning Hearing Bd.* (Pa. Cmwlth., No. 783 C.D. 2022, filed Apr. 4, 2024), slip op. at 1-2 (footnote and internal citation omitted).

LVP appealed to the City's Zoning Hearing Board (Board), which ultimately denied the appeal on April 5, 2021.  In its decision,

[t]he Board . . . concluded that [LVP] failed to meet its burden of proving unnecessary hardship.[2]  The Board explained that [LVP] did

---

[1] The Ordinance provides an exception to the City's zoning requirements for property owned by the City, as follows:

EXEMPTION FOR MUNICIPAL USES.  This Ordinance **shall not apply to any lot, existing or proposed building, use thereof, of any expansion thereof, owned, used or to be used by the City of Allentown** or for a use authorized by the Mayor or City Council by virtue of a lease or other contract.

(Reproduced Record (R.R.) at 114 (emphasis added).)
We note that the Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a").  For ease, the Court will utilize the method used by the Reproduced Record.

[2] A dimensional variance requires the applicant to establish unnecessary hardship.  As this Court has explained:

Whether an applicant is seeking a dimensional or use variance, it must show unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest.  It is only the stringency of the standard in proving an unnecessary hardship that varies, depending on whether a use or dimensional variance is sought.

To justify the grant of a dimensional variance, courts may consider multiple factors, including "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict

**(Footnote continued next page…)**

not present substantial evidence that the Property could not be used for some purpose in conformity with the Ordinance. Additionally, [LVP] offered no evidence of any active, prolonged, and specific testing of the Property's marketability. The Board also noted that [LVP]'s activities upon and use of the Property contributed, in part, to the difficulties of developing the Property.

*Id.*, slip op. at 4. LVP appealed to the trial court, which affirmed the Board's decision. LVP then appealed to this Court.

During the pendency of the zoning matter, LVP initiated the present action by filing a *pro se* Complaint against the City and other defendants in the trial court on February 23, 2020, initially asserting claims of tortious interference with business relationships, nuisance, and civil conspiracy. LVP averred:

> By virtue of the location of the [] City's digital billboard[,] [LVP] is now, and has been, prevented from erecting a digital billboard, which deprived [LVP] of the best use of [its] [P]roperty. The [P]roperty was bifurcated by the City's action creating a hardship for LVP. The highest and best use due to the bifurcation is billboards.

(Reproduced Record (R.R.) at 8-9.)

After multiple rounds of preliminary objections and amended complaints, on November 23, 2020, LVP filed a Third Amended Complaint, the operative

---

compliance with the zoning requirements and the characteristics of the surrounding neighborhood."

However, this Court consistently rejects requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth [by our Supreme Court] in *Hertzberg*[ *v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)].

*Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1186-87 (Pa. Cmwlth. 2012) (internal citations omitted).

3

complaint in this matter, against the City only. In its Third Amended Complaint, LVP asserted four causes of action: (1) *de facto* taking of LVP's Property under the federal and state Constitutions; (2) nuisance in carelessly, negligently and/or intentionally interfering with LVP's economic use of its Property; (3) unconstitutionality of the City's Ordinance; and (4) violation of LVP's civil rights under 42 U.S.C. § 1983 (Section 1983).

After the trial court overruled the City's Preliminary Objections to the Third Amended Complaint, the City filed an Answer and New Matter on October 18, 2021. Relevant to this appeal, in its New Matter, the City averred that "[LVP] failed to send the required notice of intention to make a claim against the City within six months after the cause of action accrued" as required by Section 5522(a)(1) of the Judicial Code, 42 Pa.C.S. § 5522(a)(1). (R.R. at 184.) The City also averred that "[t]he Eminent Domain Code[, 26 Pa.C.S. §§ 101-1106,] provides the exclusive method and practice governing *de facto* takings and require[d] [LVP] to file a Petition for the Appointment of a Board of Viewers[,] which [LVP] has failed to do." (*Id.* at 186.)

On December 29, 2022, while LVP's appeal in the zoning matter was pending in this Court, the City filed its Motion in the trial court. LVP filed an Answer to the Motion on February 13, 2023. On June 15, 2023, the trial court issued an order deferring its decision on the Motion until this Court's resolution of the zoning appeal.

On April 4, 2024, this Court issued a decision in LVP's zoning appeal. In affirming the trial court's ruling upholding the Board's decision, we concluded:

> **[D]espite a second opportunity to present evidence in support of its variance request, [LVP] still failed to prove unnecessary hardship.** Although [LVP] showed that the Property possesses unique physical

4

characteristics in that it is a triangular-shaped lot containing steep slopes with piles of debris, **[LVP] failed to show that the Property could not be used for some purpose in strict conformity with the Ordinance.** The Ordinance permits numerous other uses in the I3 District, including a commercial communications tower. However, [LVP] did not explore this use or any other permitted uses. In addition, [LVP] made no attempts to market the Property commercially to determine if there was public or private interest in the Property for uses permitted by the Ordinance. [LVP] only made informal inquiries with neighboring property owners, who were not interested. As [Dennis Atiyeh, LVP's site manager and billboard project manager,] explained, "the minute you take [the Property] off and start marketing it, we have to pu[t] our whole billboard project on the ice." Atiyeh persisted that the billboard use was the "highest and best use" of the Property, to the exclusion of all other possibilities. Atiyeh testified, "[t]he only use for that [P]roperty . . . is two billboards, like we have planned." **Although we recognize that the proposed billboards use may be the "highest and best" use of the Property, this does not satisfy the unnecessary hardship criterion required for a variance[]** . . . .

In addition, **the Board found that some of the Property's unique physical conditions were caused, in part, by [LVP].** Both [Steve Paney, LVP's civil engineer,] and Atiyeh testified that the Property contains piles of crushed concrete and claylike soil left over from [LVP's] former recycling business. Paney testified that if those materials could be sold and removed from the Property, [LVP] could increase the level area of the Property, which would improve its accessibility and usability. Atiyeh acknowledged that there is a market for the recycled concrete and dirt. However, **Atiyeh testified [that] "until these billboards are addressed, those [debris] piles are going to sit there."**

Upon review, **[LVP] failed to present substantial evidence that the unique physical circumstances or conditions of the Property prevented the Property from being used in conformity with the permitted uses of the Ordinance and were not, to some extent, self-inflicted.** Thus, we conclude that the Board did not err or abuse its discretion in denying [LVP's] variances.

*Lehigh Valley*, slip op. at 7-8 (internal citation omitted) (emphasis added).

Following our decision, the trial court in this matter directed the parties to file supplemental briefs addressing the impact of this Court's decision on the City's Motion and heard additional argument on August 7, 2024. Thereafter, on October 21, 2024, the trial court granted the Motion and entered judgment in the City's favor as to all four counts of the Third Amended Complaint.

First, the trial court concluded that LVP failed to meet its heavy burden of establishing a *de facto* taking of its Property. The trial court found:

> Given the determination of th[is] Court that: 1) [LVP] had failed to present substantial evidence that the unique physical circumstances or conditions of the [P]roperty prevented the [P]roperty from being used in conformity with the permitted uses of the Ordinance and were not, to some extent, self-inflicted; and 2) [LVP] failed to show that the [P]roperty could not be used for some purpose in strict conformity with the Ordinance[,] there is no genuine issue of material fact and specifically, [LVP] is unable to establish that the City substantially deprived [LVP] of the beneficial use and enjoyment of the [P]roperty.

(Trial Ct. Op., 10/21/24, at 7-8 (internal citation omitted).)

Second, the trial court dismissed LVP's nuisance claim because LVP failed to provide notice to the City of its intent to sue within six months of the accrual of the cause of action as required by Section 5522(a)(1) of the Judicial Code, 42 Pa.C.S. § 5522(a)(1).[3] The trial court determined:

---

[3] Section 5522(a)(1) of the Judicial Code provides in relevant part:

Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit for damages on account of any injury to his person or property under Chapter 85 (relating to matters affecting government units) . . . shall file in the office of the government unit[] . . . a statement in writing, signed by or in his behalf, setting forth:

**(Footnote continued next page…)**

[LVP], in the Answer to New Matter . . . [,] as well as [LVP's] Answer and Brief to the Motion for Summary Judgment . . . , has not provided proof of filing with . . . the City . . . the notice of intent to sue required pursuant to [Section 5522(a)(1) of the Judicial Code]. Likewise, there has been no showing of a reasonable excuse for failure to file the notice offered by [LVP].

(*Id.* at 8-9.)

Third, the trial court dismissed LVP's challenges to the constitutionality of the Ordinance because LVP did not assert those claims before the Board in the first instance, concluding:

[LVP] has not raised this challenge to the validity of the [O]rdinance in question in any proceeding before the . . . Board when it had opportunity to do so. As such[,] [LVP] failed to exhaust the statutory remedies available to it prior to seeking the relief sought in this litigation.

(*Id.* at 12.)

Finally, with regard to LVP's claim for relief under Section 1983, the trial court determined:

[LVP] conflates the same assertions that were raised in [C]ounts [I and III] to culminate in an allegation that the City was enacting and enforcing a zoning ordinance that results in the unconstitutional

---

(i) The name and residence address of the person to whom the cause of action has accrued.

(ii) The name and residence address of the person injured.

(iii) The date and hour of the accident.

(iv) The approximate location where the accident occurred.

(v) The name and residence or office address of any attending physician.

42 Pa.C.S. § 5522(a)(1).

deprivation of [LVP's] right and ability to use its land to install and operate a billboard.

As stated by [this] Court, [LVP] has the ability to use the [P]roperty in conformity with the permitted uses. Since that holding is controlling, [LVP] is unable to prove a deprivation of [its] rights to the [P]roperty. Furthermore, and for the same reasons that have been stated for this court granting summary judgment regarding [C]ount[s] [I and III] of the [Third Amended C]omplaint, so too does the [trial] court grant summary judgment regarding [C]ount [IV] . . . .

(*Id.* at 13 (internal citation omitted).) LVP now appeals to this Court.[4]

## II. ANALYSIS
### A. Count I: *De Facto* Taking

First, LVP asserts that the trial court erred in concluding that LVP failed to establish a *de facto* taking of its Property. In Count I of the Third Amended Complaint, LVP alleges that the City "allowed the installation of [a digital] billboard" on its property "without regard for the impact such a billboard would have on [LVP's] use of its land" and, as a result, LVP "is prevented from installing a billboard and thus cannot make use of [its P]roperty[,] causing added financial duress and hardship." (R.R. at 116.)

---

[4] Our review of a trial court order granting "summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion." *Laich v. Bracey*, 776 A.2d 1022, 1024 n.3 (Pa. Cmwlth. 2001). Moreover,

[s]ummary judgment is properly granted "whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report. . . ." Summary judgment may be granted only in those cases where the right is clear and free from doubt. The moving party has the burden of proving that there is no genuine issue of material fact. Furthermore, the record and any inferences therefrom must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Id.* at 1024 (internal citations omitted); *see* Pa.R.Civ.P. 1035.2.

8

Count I asserts a claim of inverse condemnation, which our Supreme Court has described as follows:

> "Inverse condemnation stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority. Pennsylvania, like every other State besides Ohio, provides a state inverse condemnation action." *Knick v. Twp. of Scott*, [588 U.S. 180] (2019) (citing [Eminent Domain] Code). "The Pennsylvania Constitution provides that private property cannot be taken for public use without just compensation." *In re De Facto Condemnation & Taking of Lands of WBF Assocs., L.P.*, . . . 903 A.2d 1192, 1199 ([Pa.] 2006) (citing Pa. Const. [a]rt. I, § 10). . . .
>
> The *de facto* taking concept allows parties to recover where governmental action, while falling short of a physical invasion or appropriation, interferes with property rights to the extent that compensation is required under the United States Constitution.

*PBS Coals, Inc. v. Dep't of Transp.*, 244 A.3d 386, 412-13 (Pa. 2021). Further,

> it is well established that the burden of proving a *de facto* taking is a heavy one and each case turns on its unique factual matrix. In all cases the burden is on the property owner claiming a *de facto* taking to prove a *de facto* taking. In order to establish a *de facto* taking, the property owner must show that there are exceptional circumstances which have substantially deprived him of the beneficial use and enjoyment of his property. "This substantial deprivation must be occasioned by the actions of the entity clothed with the power of eminent domain, be caused as a result of the exercise of that power, and the damages sustained by the condemnee must be an immediate, necessary and unavoidable consequence of such exercise."

*Riedel v. County of Allegheny*, 633 A.2d 1325, 1328 (Pa. Cmwlth. 1993) (internal citations omitted).

In this case, Count I of the Third Amended Complaint asserts a *de facto* taking claim under the Fifth Amendment to the United States Constitution, known as the

federal Takings Clause, and Article I, Section 1 of the Pennsylvania Constitution.[5] (R.R. at 115, 118.)  LVP maintains that "[t]he *de facto* taking here implicates [its] constitutional rights" because it "has been deprived of its property rights through the unconstitutional zoning ordinance without substantive or procedural due process." (LVP's Br. at 8-9.)

With regard to LVP's claim under the Pennsylvania Constitution, our case law holds that a state law claim for a *de facto* taking falls **exclusively** within the purview of the Eminent Domain Code.  "It is well established that **the [Eminent Domain] Code provides the exclusive method and practice governing eminent domain proceedings, including *de facto* takings**." *Linde Enters., Inc. v. Lackawanna River Basin Sewer Auth.*, 911 A.2d 658, 661 (Pa. Cmwlth. 2006) (emphasis added); *see also Gerg v. Township of Fox*, 107 A.3d 849, 852 (Pa. Cmwlth. 2015) ("[W]e have held that the Eminent Domain Code provides the *exclusive* method and practice governing eminent domain proceedings, including *de facto* takings[] . . . .") (italics in original).  In this regard, "[t]he [Eminent Domain] Code's procedure for requesting a board of viewers represents the General Assembly's implementation of a mechanism to receive compensation for *de facto* takings."  *PBS Coals*, 244 A.3d at 412; *see also Conroy-Prugh Glass Co. v. Dep't of Transp.*, 321 A.2d 598, 599 (Pa. 1974) ("The Pennsylvania [l]egislature recognized the concept of '*de facto*' taking when it enacted [Section] 502(e) of the Eminent Domain Code . . . .").

---

[5] *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Pa. Const. art. I, § 1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are . . . possessing and protecting property and reputation[] . . . .").  We note, however, that the Pennsylvania Takings Clause actually appears in **Article I, Section 10** of the Pennsylvania Constitution.  *See* Pa. Const. art. I, § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.").

10

The Third Amended Complaint does not assert a cause of action under the Eminent Domain Code, and it is undisputed that LVP did not follow the procedures set forth in the Eminent Domain Code for asserting a *de facto* taking claim against the City, by first filing a petition for appointment of a board of viewers. *See* Section 502(c) of the Eminent Domain Code, 26 Pa.C.S. § 502(c) (setting forth the procedure for condemnation where no declaration of taking has been filed); *see also N-Jie v. Dep't of Transp.*, 300 A.3d 1131, 1142 (Pa. Cmwlth. 2023) ("Section 502(c)(1) of the Eminent Domain Code authorizes the 'owner of a property interest who asserts that [his or her] property interest has been condemned without the filing of a declaration of taking[, to] file a petition for the appointment of viewers . . . setting forth the factual basis of the petition.'") (quoting 26 Pa.C.S. § 502(c)(1)). Because LVP failed to exhaust its remedies under the Eminent Domain Code, it cannot maintain a *de facto* taking claim under state law.

LVP also asserts a *de facto* taking claim under the federal Takings Clause. LVP contends that the City deprived it of its right to use its Property to erect a digital billboard. Specifically, LVP avers that the City "has prevented [LVP] from installing a billboard on [its] land by virtue of the billboard that the [City] contracted to lease and install on public land." (R.R. at 117.) LVP further avers that "[a]s a direct result of the City's lease of the billboard" on its own property, LVP "is prevented from installing a billboard and thus cannot make use of the [P]roperty causing added financial duress and hardship." (*Id.* at 116.)

"The Takings Clause of the Fifth Amendment prohibits the federal government from taking private property for public use without providing just compensation." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012). This prohibition applies to state and municipal actors

11

through the Fourteenth Amendment to the United States Constitution. *See id.* "[A] party challenging governmental action as an unconstitutional taking [under the Fifth Amendment] bears a substantial burden." *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998).

However, "[a] taking has not occurred simply because a plaintiff has been denied the most profitable use of the property." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 670 (3d Cir. 2022). Indeed, "[o]ur courts have consistently held an otherwise valid exercise of the police power does not effectuate a constitutional taking of property for public use even though [] its exercise resulted in the entire suppression of [a property owner's] business . . . and even when it forces the offending industry out of business." *Com. v. Barnes & Tucker Co.*, 353 A.2d 471, 479 (Pa. Cmwlth. 1976); *see Est. of Blose v. Borough of Punxsutawney*, 889 A.2d 653, 657-58 (Pa. Cmwlth. 2005) (explaining the interplay between the power of eminent domain and the exercise of police power to regulate the use of property). Zoning is generally considered an exercise of a municipality's police powers, and "[z]oning regulations are the 'classic example' of permissible regulations that do not require compensation even where they 'prohibit[] the most beneficial use of the property.'" *Nekrilov*, 45 F.4th at 675 (citation omitted; alteration in original).

The United States Court of Appeals for the Third Circuit has held that to establish a claim under the federal Takings Clause, the plaintiff must be deprived of **all** beneficial uses of its property:

> [The plaintiff] argues that the demolition of the [b]uilding eviscerated the property's intended purpose of providing rental income. **But the Takings Clause asks not whether the plaintiff's most profitable use of the property has been destroyed. A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property.** *See Andrus v. Allard*, 444 U.S. 51, 65-66[] . . . (1979). **[The plaintiff] concedes that he retains a possessory interest in the**

12

**property. Indeed, [the plaintiff] is still entitled to put the property to any number of beneficial uses.** The record reflects that [he] simply lacks sufficient funds to do so, at present. Even if [the city official] was without authority to order the demolition, **[the plaintiff's] continuing possessory interest in the property prevents him from establishing a Takings Clause violation.**

*Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012) (emphasis added); *see also Van v. City of Philadelphia*, 2024 U.S. Dist. LEXIS 186949, at *10 (E.D. Pa. 2024) (stating that "'[a] taking has not occurred simply because a plaintiff has been denied the most profitable use of the property'"; rather, "[a] Takings Clause claim is plausible 'if the government action []deprived [the plaintiff] of all or substantially all of the beneficial uses of the property.'") (citations and some quotation marks omitted).

Here, the trial court, relying on this Court's prior decision in the related zoning matter, concluded:

> Given the determination of th[is] Court that: 1) [LVP] had failed to present substantial evidence that the unique physical circumstances or conditions of the [P]roperty prevented the [P]roperty from being used in conformity with the permitted uses of the Ordinance and were not, to some extent, self-inflicted; and 2) [LVP] failed to show that the [P]roperty could not be used for some purpose in strict conformity with the Ordinance, there is no genuine issue of material fact and specifically, **[LVP] is unable to establish that the City substantially deprived [LVP] of the beneficial use and enjoyment of the [P]roperty.**

(Trial Ct. Op., 10/21/25, at 7-8 (emphasis added)); *see Lehigh Valley*, slip op. at 7-8.

In Count I, LVP alleges that the "Property is an industrial lot with setbacks, slopes, and grading and concrete stock, thereby **preventing the use of the property for anything other than a billboard.**" (R.R. at 116 (emphasis added).) Contrary to this allegation, however, this Court previously determined, based on the evidence

13

presented in the zoning matter, that the City's conduct precluded only **one** desired use of LVP's Property, as follows:

> Although [LVP] showed that the Property possesses unique physical characteristics in that it is a triangular-shaped lot containing steep slopes with piles of debris, **[LVP] failed to show that the Property could not be used for some purpose in strict conformity with the Ordinance. The Ordinance permits numerous other uses in the I3 District, including a commercial communications tower. However, [LVP] did not explore this use or any other permitted uses. In addition, [LVP] made no attempts to market the Property commercially to determine if there was public or private interest in the Property for uses permitted by the Ordinance. [LVP] only made informal inquiries with neighboring property owners, who were not interested.** As Atiyeh explained, "the minute you take [the Property] off and start marketing it, we have to pu[t] our whole billboard project on the ice." Atiyeh persisted that the billboard use was the "highest and best use" of the Property, to the exclusion of all other possibilities. . . .

*Lehigh Valley*, slip op. at 7-8 (internal citations omitted) (emphasis added). Crucially, LVP still has a possessory interest in its Property, and, as this Court found, several other permissible uses remain available to LVP that it chose not to pursue. Our Court's prior determination of this factual issue is controlling in this case, as LVP was also a party in the zoning matter. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). Because LVP maintains a possessory interest in the Property and has not established a substantial deprivation of its property rights, it cannot maintain a *de facto* taking claim under federal law.

Therefore, we conclude that the trial court properly granted summary judgment in the City's favor as to Count I of the Third Amended Complaint.

B.  Nuisance/Interference With Use of Land

Second, LVP asserts that the trial court erred in granting summary judgment in the City's favor as to Count II of the Third Amended Complaint because the record establishes that the City created a nuisance by unreasonably interfering with LVP's use of its Property.  In particular, LVP avers that the City "negligently created a nuisance such that [it] enabled competing commercial entities to interfere with [LVP's] use of [its P]roperty" and "knew, or should have known, that by installing a billboard on public property it would interfere with [LVP's] use of its land." (R.R. at 121.)  LVP seeks damages for "loss in the value of [its] land and loss of income" due to the City's alleged negligence "in excess of $100,000.00 together with interest at the legal rate, fees, costs and expenses." (*Id.* at 122.)

Count II asserts a private nuisance claim. (*See id.* at 216.)  "Private nuisances are 'nontrespassory invasion[s] of another's interest in the private use and enjoyment of land.'" *Carnahan v. Slippery Rock Twp. Zoning Hearing Bd.*, 305 A.3d 211, 224 (Pa. Cmwlth. 2023) (citation omitted).  This Court has explained:

> In evaluating a private nuisance claim, the key question is whether one person has impaired another person's private right of use or enjoyment of their land.  [A]ny one of the types of conduct that serve in general as the bases for all tort liability may invade a person's private right of use or enjoyment of their land.  A defendant may be liable for the invasion of such use and enjoyment when the interference is intentional and unreasonable or the result of negligent, reckless or abnormally dangerous conduct.

*Id.* (internal citation omitted).[6]

---

[6] Our Supreme Court has explained the difference between private and public nuisance claims as follows:

> There is a distinction between a public nuisance, common to all members of the public alike, and a private nuisance or acts affecting a member of the public.  A

**(Footnote continued next page…)**

15

A private nuisance claim sounds in tort, which, when asserted against a municipality, implicates the protections of the statute commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-42. Under Section 8541(a) of the Tort Claims Act, the City is generally immune from liability for damages resulting from injury to persons or property, but it may be liable for damages under the limited exceptions set forth in Section 8542(b) of the Tort Claims Act.

In its Motion, the City asserted, and the trial court agreed, that LVP's nuisance claim was barred by Section 5522(a)(1) of the Judicial Code, which provides:

> **(1) Within six months from the date that any injury was sustained or any cause of action accrued**, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere **against a government unit for damages on account of any injury to his person or property under Chapter 85 [of the Judicial Code] (relating to matters affecting government units) or otherwise shall file in the office of the government unit,** and if the action is against a Commonwealth agency for damages, then also file in the [O]ffice of the Attorney General, **a statement in writing,** signed by or in his behalf, setting forth:
>
> > (i) The name and residence address of the person to whom the cause of action has accrued.
> >
> > (ii) The name and residence address of the person injured.
> >
> > (iii) The date and hour of the accident.

---

public nuisance is an inconvenience or troublesome offense that annoys the whole community in general, and not merely some particular person, and produces no greater injury to one person than to another—acts that are against the well-being of the particular community—and is not dependent upon covenants. The difference between a public and a private nuisance does not depend upon the nature of the thing done, but upon the question whether it affects the general public or merely some private individual or individuals.

*Phillips v. Donaldson*, 112 A. 236, 237-38 (Pa. 1920).

(iv) The approximate location where the accident occurred.

(v) The name and residence or office address of any attending physician.

42 Pa.C.S. § 5522(a)(1) (emphasis added); *see Nagy v. Upper Yoder Township*, 652 A.2d 428, 431 (Pa. Cmwlth. 1994) ("The notice of intention required by [Section] 5522 [of the Judicial Code,] simply notifies a municipality that an individual intends to file suit against the municipality."). However, subsections (2) and (3) of Section 5522(a) provide that a plaintiff's failure to comply with the six-month notice requirement may be excused in the following limited circumstances:

(2) If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury to person or property shall be dismissed and the person to whom any such cause of action accrued for any injury to person or property shall be forever barred from proceeding further thereon within this Commonwealth or elsewhere. The court shall excuse failure to comply with this requirement upon a showing of reasonable excuse for failure to file such statement.

(3) In the case of a civil action or proceeding against **a government unit other than the Commonwealth government**:

. . . .

(iii) Failure to comply with this subsection **shall not be a bar if the government unit had actual or constructive notice of the incident or condition giving rise to the claim of a person**.

42 Pa.C.S. § 5522(a)(2) and (3)(iii) (emphasis added).

LVP does not dispute that it did not file the required statement with the City in advance of filing this action, and essentially admits that fact in its appellate brief.

17

(*See* LVP's Br. at 13.)[7]  Thus, since LVP filed this suit against a municipality, a non-Commonwealth governmental entity, we must look to subsection (a)(3)(iii) to determine whether LVP's failure to file the six-month notice with the City is a bar to its nuisance cause of action.[8]

Section 5522(a)(3)(iii) might have excused LVP from the six-month notice requirement, **if** LVP had established that the City had "actual or constructive notice of the incident or condition giving rise to the claim."  42 Pa.C.S. § 5522(a)(3)(iii).  However, before this Court, LVP offers no explanation for its failure to file the required statement, nor does it assert that the City had "actual or constructive notice of the incident or condition" giving rise to its nuisance claim.  LVP instead argues that it was not required to give the required notice because "[t]his case is a civil rights action brought under 42 U.S.C. § 1983," which "does not have any notice or statute of limitations requirement."  (LVP's Br. at 13.)[9]  Contrary to LVP's

---

[7] In its brief, LVP contends that it was not required to file the six-month notice because "[t]his is not a claim under the . . . Tort Claims Act, to which the statute of limitations provisions apply."  (LVP's Br. at 13.)  As explained above, however, a private nuisance claim sounds in tort, which, when asserted against a municipality, **does** implicate the protections of the Tort Claims Act.

[8] The trial court granted summary judgment in the City's favor as to the nuisance claim because it found that LVP's failure to file the required notice was not excused under subsection (2) of Section 5522(a), rather than subsection (a)(3)(iii), which applies to non-Commonwealth governmental entities.  It is well settled, however, that this Court may affirm the trial court on any basis appearing of record.  *See Washington v. Dep't of Transp., Bureau of Driver Licensing*, 301 A.3d 982, 985 (Pa. Cmwlth. 2023) (*en banc*) ("This Court may affirm a trial court's order on any basis appearing in the record.").

[9] This is an incorrect statement of law.  The statute of limitations for a Section 1983 claim is the same as for personal injury tort claims, which, in Pennsylvania, is two years from the date the cause of action arose.  *See Burger v. Borough of Ingram*, 697 A.2d 1037, 1041 (Pa. Cmwlth. 1997) ("[C]laims which are brought pursuant to 42 U.S.C. § 1983 are [] subject to a two-year statute of limitations in Pennsylvania.").

contention, however, simply adding a federal Section 1983 count to its complaint[10] does not exempt LVP from the procedural and jurisdictional requirements necessary to maintain its separately pled state law claims.

Therefore, because LVP did not comply with the notice requirement of Section 5522(a)(1) of the Judicial Code, we conclude that the trial court properly granted summary judgment in the City's favor as to Count II of the Third Amended Complaint.

### C. Count III: Constitutional Claims

Next, LVP asserts that the trial court erred in concluding that LVP was required to challenge the constitutionality of the Ordinance before the Board prior to filing its action in the trial court. Specifically, LVP challenges the constitutionality of Section 1311.17 of the Ordinance, which states:

> EXEMPTION FOR MUNICIPAL USES. This Ordinance **shall not apply** to any lot, existing or proposed building, use thereof, or any expansion thereof, **owned, used, or to be used by the City of Allentown** or for use authorized by the Mayor or City Council by [v]irtue of a lease or other contract.

(R.R. at 114 (emphasis added).)

In Count III of the Third Amended Complaint, LVP vaguely references Article I, Section 1 of the Pennsylvania Constitution and "the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution" and seeks "[a]n [o]rder declaring Zoning Ordinance [Section] 1311.17 violates the Pennsylvania and United States Constitutions." (*Id.* at 122-24.) LVP also avers that the Ordinance "is unconstitutionally broad" because "it gives the City . . . the

---

[10] LVP first included a Section 1983 claim against the City in its Second Amended Complaint.

unfettered ability to simply ignore all zoning rules and laws and to use property for any purpose whatsoever." (*Id.* at 123.)

Section 909.1(a)(1) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10909.1(a)(1) (emphasis added),[11] provides that "[t]he **zoning hearing board shall have exclusive jurisdiction** to hear and render final adjudications" with regard to "**[s]ubstantive challenges to the validity of any land use ordinance**, except those brought before the governing body pursuant to [S]ections 609.1 and 916.1(a)(2) [of the MPC]." Section 916.1(b) of the MPC further provides:

> **Persons aggrieved by a use or development permitted on the land of another by an ordinance** or map, or any provision thereof, **who desires to challenge its validity on substantive grounds shall first submit their challenge to the zoning hearing board** for a decision thereon under [S]ection 909.1(a)(1) [of the MPC].

53 P.S. § 10916.1(b) (emphasis added).[12]

Consistent with these provisions of the MPC, the City's Ordinance provides that the Board "'**shall have exclusive jurisdiction** to hear and render decisions'" concerning "'substantive challenges to the validity of the Ordinance, except those brought before [City] Council.'" (Trial Ct. Op., 10/21/24, at 10 (quoting Ordinance) (emphasis added).) This jurisdictional requirement applies to constitutional challenges to a land use ordinance, as our Court has explained:

> [B]ecause a land use ordinance is adopted pursuant to the police powers delegated to local jurisdictions by the MPC, **and the MPC vests the zoning hearing board with jurisdiction in the first instance** to hear substantive challenges to the validity of any land use ordinance, with limited exceptions, **constitutional challenges**, **including those based**

---

[11] Section 909.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329.

[12] Section 916.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329.

20

**on an assertion of a taking by a local entity without just compensation in the permitting context, originate before the zoning hearing board rather than within the court of common pleas.**

*Delchester Devs., L.P. v. Zoning Hearing Bd. of Twp. of London Grove*, 161 A.3d 1081, 1090 n.7 (Pa. Cmwlth. 2017) (emphasis added); *see also Lower Southampton Township v. Dixon*, 756 A.2d 147, 150 n.9 (Pa. Cmwlth. 2000) ("Zoning hearing boards regularly consider constitutional challenges to the validity of their municipalities' ordinances."); *Tirotta v. Zoning Hearing Bd. of Yeadon*, 532 A.2d 937, 940 (Pa. Cmwlth. 1987) (holding that "[c]hallenges on constitutional grounds to the substantive validity of provisions of zoning ordinances as they affect all property in the municipality must be pursued by the procedures set forth in" the MPC, which "are the exclusive means of making such challenges").

LVP's Third Amended Complaint is replete with averments challenging the constitutionality and validity of the Ordinance at issue, not only in Count III, but also in Counts I and IV.  (*See, e.g.*, R.R. at 118-19, 122-26.)  In fact, LVP asserted in the trial court:

> Although properly separated into discrete causes of action and enumerated Counts as the [Pennsylvania] Rules [of Civil Procedure] require, **the gravamen of [LVP's] claims, and the relief it requests[,] all arise as a direct result of the City's adoption and implementation of an unlawful and unconstitutional [z]oning [o]rdinance** proviso, to wit, . . . Ordinance Section 1311.17.  [LVP] asserts that Section 1311.17 is blatantly violative of both the United States and Pennsylvania [] Constitutions, as well as state law and is, therefore, void <u>ab initio</u>.

(LVP's Suppl. Br. in Opp'n to Summ. J. at 2 (underlining in original; bold added).)  However, despite the "gravamen" of each of its claims stemming from the City's allegedly "unlawful and unconstitutional" Ordinance, LVP did not assert a challenge to the substantive validity of the Ordinance before the Board in the first instance, as

21

required by the MPC and our case law. (*See* Trial Ct. Op., 10/21/24, at 12 ("[LVP] has not raised this challenge to the validity of the [O]rdinance in question in any proceeding before the City Zoning Hearing Board when it had [the] opportunity to do so.").)[13] Therefore, we conclude that the trial court properly granted summary judgment in the City's favor as to Count III of the Third Amended Complaint.

## D. Count IV: 42 U.S.C. § 1983

Finally, LVP asserts that the trial court erred in concluding that LVP did not establish a claim under Section 1983. In Count IV of the Third Amended Complaint, LVP alleges that the City's construction of its digital billboard pursuant to Section 1311.17 of the Ordinance resulted in the unconstitutional deprivation of LVP's right and ability to install a digital billboard on its Property, thereby depriving LVP of the use and enjoyment of its Property. (R.R. at 125.) Specifically, LVP avers that the City unlawfully "used the [O]rdinance to unconstitutionally deprive [LVP] of the right and ability to install a billboard on [its] land," specifically by exempting itself from the requirement, applicable to all other property owners, that digital billboards be spaced 1,000 feet apart and then constructing a billboard 571 feet from LVP's Property. (*Id.* at 113, 126.) LVP seeks damages for the economic harm it allegedly

---

[13] In contesting the trial court's dismissal of LVP's constitutional claims on this basis, LVP relies on *Knick v. Township of Scott*, 588 U.S. 180 (2019). (*See* LVP's Br. at 16-17.) *Knick*, however, is inapplicable. In *Knick*, the United States Supreme Court addressed whether a property owner alleging an unlawful taking of property by a state actor was required to first seek just compensation from a state court before filing a Section 1983 action alleging a Takings Clause violation in federal court. The *Knick* Court eliminated the state-litigation requirement for federal takings claims brought against state actors under Section 1983. *Knick*, 588 U.S. at 185; *see id.* at 205 (explaining that its holding "allow[s] into federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court"). Thus, *Knick*'s limited holding has no application to LVP's constitutional challenge to the substantive validity of Section 1311.17 of the Ordinance asserted in Count III.

suffered, "in excess of $100,000.00 together with interest at the legal rate, fees, costs and expenses." (*Id.* at 127.)

Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A municipality, such as the City here, "is a 'person' that can be sued directly under Section 1983 and be held liable in certain circumstances." *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 244 (Pa. Cmwlth. 2017). Our Court has recognized that "'Section 1983 imposes liability on a municipality when an official policy of the municipality causes an employee, acting under the color of law, to violate another's constitutional rights.'" *Frazier v. City of Philadelphia*, 756 A.2d 80, 83 (Pa. Cmwlth. 2000) (citation omitted). Further, "local government bodies can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where the action complained of executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Thomas v. City of Philadelphia*, 804 A.2d 97, 107 n.17 (Pa. Cmwlth. 2002). "[T]he language of Section 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy . . . caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

To state a claim under Section 1983, the plaintiff must prove the deprivation of a right guaranteed by the Constitution or laws of the United States by a defendant acting under color of state law. *Pettit v. Namie*, 931 A.2d 790, 802 (Pa. Cmwlth.

2007).  **Section 1983 '"is not itself a source of substantive rights**,' but merely provides 'a method of vindicating **federal rights elsewhere conferred**.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted) (emphasis added).  Moreover, a plaintiff asserting a Section 1983 claim must plead facts giving rise to the claimed deprivation of civil liberties while avoiding vague, conclusory allegations.  *Palmer v. Bartosh*, 959 A.2d 508, 515 (Pa. Cmwlth. 2008).  In addition, "a Section 1983 plaintiff must establish a causal connection between the constitutional violation and the relief sought."  *Z&R Cab, LLC v. Phila. Parking Auth.*, 335 A.3d 1275, 1285 (Pa. Cmwlth. 2025).

In Count IV, just as in Count I, LVP repeatedly avers that the City deprived LVP of the use of its Property by "depriv[ing] [LVP] of the right and ability to install a billboard on [its] land," vaguely referencing the Fifth and Fourteenth Amendments to the United States Constitution.  (R.R. at 125-26.)  Given the duplicative nature of the averments in both counts, it appears that LVP is merely attempting to recast its *de facto* taking claim as a Section 1983 claim.  However, for the reasons discussed in Section II.A. of this Opinion, *supra*, LVP has not established a deprivation of its property rights under federal law, as LVP still remains in possession of the Property. *See Munoz*, 481 F. App'x at 759 (holding that the plaintiff's "continuing possessory interest in the property prevents him from establishing a [federal] Takings Clause violation"); *Van*, 2024 U.S. Dist. LEXIS, at *11 (holding that "[i]f [the plaintiff] remains the owner of the property, his [federal] Takings Clause claim **fails as a matter of law**") (emphasis added).

Furthermore, as the trial court aptly observed:

> [LVP] conflates the same assertions that were raised in [C]ounts [I] and [III of the Third Amended Complaint] to culminate in an allegation that the City was enacting and enforcing a zoning ordinance that results in

24

> the unconstitutional deprivation of [LVP's] right and ability to use its land to install and operate a billboard.
>
> As stated by th[is] Court [in the zoning matter], **[LVP] has the ability to use the [P]roperty in conformity with the permitted uses. Since that holding is controlling, [LVP] is unable to prove a deprivation of [its] rights to the [P]roperty.**

(Trial Ct. Op., 10/21/24, at 13 (internal citations omitted) (emphasis added)); *see Lehigh Valley*, slip op. at 7-8. Because this Court has already determined that LVP was **not** deprived of all beneficial use of its Property, it cannot maintain a Section 1983 claim based on a *de facto* taking under federal law. *See Higgin v. City of Wilmington*, 2022 U.S. Dist. LEXIS 177002, at *7-8 (D. Del. 2022) (holding that a complaint failed to state a Section 1983 claim where it improperly alleged "due process" violations under the federal Takings Clause and finding no taking as a matter of law because the "[p]laintiff retained a possessory interest in the property"); *3909 Realty LLC v. City of Philadelphia*, 2021 U.S. Dist. LEXIS 106941, at *15 (E.D. Pa. 2021) (dismissing a Takings Clause claim where the plaintiffs did not allege that they lost all beneficial use of the property or lost their possessory interest in the property); *see also Balent v. City of Wilkes-Barre*, 669 A.2d 309, 314 (Pa. 1995) ("If a claim or issue related to th[e] federal right [asserted as the basis for a Section 1983 claim] has been determined in a prior adjudication, the established rules of res judicata and collateral estoppel apply.").

Therefore, we conclude that the trial court properly granted summary judgment in the City's favor as to Count IV of the Third Amended Complaint.

### III. CONCLUSION

In sum, we conclude that the trial court properly entered summary judgment in the City's favor as to all four counts of the Third Amended Complaint. Accordingly, we affirm the trial court's Order.

_____
RENÉE COHN JUBELIRER, President Judge

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Properties, Inc., : 
                        Appellant : 
                              : 
                v. :     No. 1576 C.D. 2024
                              : 
City of Allentown : 

# **O R D E R**

**NOW**, February 13, 2026, the October 21, 2024 Order of the Court of Common Pleas of Lehigh County is hereby AFFIRMED.

 

_____
RENÉE COHN JUBELIRER, President Judge